[Civ. No. 6998. Fourth Dist. Dec. 12, 1963.]

GENE A. GOODY, Plaintiff and Appellant, v. CITY OF EL CAJON, Defendant and Respondent.

Robert A. Ward and Thad D. Williams for Plaintiff and Appellant.

McInnis, Focht & Fitzgerald and William T. Fitzgerald for Defendant and Respondent.

COUGHLIN, J.—This is an action to recover damages for injuries allegedly sustained by the plaintiff as a result of the negligent operation of an automobile by the defendant Irey, a traffic officer, employed by the defendant City of El Cajon.

In *Goody* v. *City of El Cajon*, 196 Cal.App.2d 6 [16 Cal. Rptr. 254], this court affirmed an order of nonsuit, dismissing the action as to the defendant Irey, and reversed a judgment on the pleadings in favor of the defendant city. Subsequently, the action against the city was tried before a jury and resulted in a judgment in its favor. The plaintiff appeals.

On the evening of October 6, 1958, the plaintiff while driving a 1957 Ford pickup truck, was stopped by Officer Irey for an alleged traffic violation, *viz.*, excessively loud exhaust noise; was advised by the officer that the exhaust noise from his truck was too loud; protested that it was not too loud; refused to accelerate his motor, at the officer's request, so that the extent of the noise made thereby could be determined; claimed that this would be unwise because of a "knock" in the motor which he feared was due to a defective rod; got out of the truck when the officer commanded him to do so; stood beside the open truck door, between it and the body of the truck, facing the latter, with his left arm resting on top of the former, when the officer accelerated the motor, causing the truck to lurch forward; and claimed that his hand was caught in the door, that he was dragged forward, and that his left shoulder was injured.

The plaintiff testified that as he left the truck the motor was running; the transmission was in its "drive" position; that he set the emergency brake; that he took the position heretofore noted beside the truck; that, simultaneously, the officer entered the truck and sat on the driver's side; and that as the officer accelerated the motor the truck lurched forward about 6 feet.

The officer testified that when he requested the plaintiff to accelerate his motor the latter stated that he did not want to, but the officer could; that he motioned the plaintiff to move to the center of the seat but instead of doing so the plaintiff got out; that he, the officer, did not enter the truck; that he accelerated the motor by placing one foot into the truck and tapping on the accelerator pedal; that the truck moved forward about 6 inches, and the engine "died"; and that the plaintiff said: "You tore my arm off"; and asked to be taken to a hospital, but did not appear to be in pain or discomfort.

At the hospital the admitting nurse requested the plaintiff to sign a paper, which he refused to do until he had talked to his attorney.

Among the issues for determination by the trier of fact was whether Officer Irey's action at the time of the subject incident constituted an "operation" of the truck within the meaning of section 17001 of the Vehicle Code; if so, whether it was a "negligent operation"; whether the plaintiff was contributorily negligent; and the extent of the injuries claimed to have been received by the plaintiff as a result thereof.

At the trial, the plaintiff related his version of the incident under inquiry. He also testified that his truck was a year old; was new when purchased; was in good condition; did not have "unusual appliances or any extra appliances on it, either pipes or anything of that nature"; and that its equipment was standard. This testimony would support a contention that his truck was not making loud exhaust noises on the date in question, and that the officer had stopped him without cause. In addition, he testified that the officer delayed an hour and a half, without cause, before taking him to the hospital.

The import of the foregoing testimony has a bearing on the extent of the plaintiff's cross-examination during which, over objection, he was interrogated respecting incidents occurring both before and after the subject accident, when allegedly he had been stopped by traffic officers because his truck had been emitting loud exhaust noises. At the trial the objection to this interrogation was based upon the ground of immateriality. On appeal the contention is that it was irrelevant; "driving with loud exhaust pipes was *irrelevant* to the issues in the instant case"; evidence showing that the plaintiff had been stopped by police officers because of such driving was

irrelevant as proof of that fact; and, for this reason, the court erred in overruling his objections thereto. In reality, the issue involved is whether the interrogation was a proper subject of cross-examination; was directed to a material issue; and was relevant to the proof of that issue.

Prior to the interrogation in question the attorney for defendant, outside the hearing of the jury, advised the court and counsel for the plaintiff that he intended to interrogate the plaintiff concerning other occasions when the latter had been stopped by the police because of loud muffler noises, for which he had been found guilty, and argued that he should be permitted to do so in an attempt to show that, contrary to the plaintiff's apparent contention, the muffler on his truck was defective. After hearing the contentions made by both sides, the trial court expressed its belief that any examination respecting traffic convictions would be improper; that, otherwise, cross-examination directed to the subjects in question was permissible; but admonished the defendant not to inquire whether the plaintiff had been convicted of any alleged violations.

Preliminary to the indicated cross-examination it was established that the plaintiff's truck was in the same condition both before and after October 6, 1958, i.e., the date of the subject accident, as it was on that date. Thereupon, the plaintiff was asked if he had been stopped on April 4, 1958, i.e., before the accident, because of loud exhaust noises coming from his truck; whether he got out of his car at that time; and whether he then listened to the sound coming from his motor. To each of these questions he replied, in substance, that he did not remember. Then he was asked similar questions concerning an incident occurring after October 6, 1958, in La Mesa. His answers, given at different times in the course of his cross-examination, were inconsistent. At first he stated that he probably was stopped, "if you say so"; that he did not know whether he then got out of his automobile; and, in response to the question whether he listened to ascertain whether his motor was making too much noise on this occasion, he stated that he did not remember "this occasion either." Thereafter, he said he was not stopped in La Mesa. Subsequently, he testified that he had been stopped there but was driving an automobile other than his truck. In reply to a question whether he had been stopped after October 6, 1958, by a California Highway Patrol officer, with reference to the

condition of his muffler, he replied: "Not that I can recall, sir."

After interrogating the plaintiff with respect to the aforesaid specific instances, the following questions and answers were asked and given: "Q. How many times in all were you stopped while driving that Ford Ranchero with reference to the condition of your muffler? A. Since that date, sir? Q. At any time driving that same automobile during the time it was in the same condition that it was in on the date of October 6th, 1958. A. Three times by Earl Irey. And, maybe the times that you are talking about but I don't remember those." It should be noted that the plaintiff volunteered the information that on three occasions the officer who stopped him was Earl Irey.

The defendant contends that the jury could have concluded from the plaintiff's testimony on direct examination that Officer Irey stopped him without just cause; that his truck was not defective; that it had not emitted loud exhaust noises; that, following injury, hospital assistance was withheld from him for an hour and a half without just cause; that, in substance, he was the "victim of a personal vendetta"; and that although the officer had no material interest in the outcome of the action, as he was not then a party thereto nor an employee of the defendant city, the verity of his testimony should be considered in the light of this "vendetta." To forestall the conclusion that Irey's testimony was the product of a "personal vendetta" against the plaintiff, the defendant sought to establish, through cross-examination, that the plaintiff's truck did emit loud exhaust noises, and thus eliminate a major premise in support of any argument that the testimony in question was untrustworthy for the reasons indicated. To this end, the defendant was entitled to explore the plaintiff's knowledge respecting the allegedly defective muffler condition of his truck in an attempt to establish the existence of this condition by showing that he had heard the truck emit loud exhaust noises after his attention had been directed thereto by an officer who had stopped him claiming such to be the fact. It is of no legal consequence, in determining the propriety of the court's order permitting such examination, that the plaintiff testified that he did not remember being stopped, or listening to the exhaust noises from his truck on the occasions about which he was interrogated. The defendant was entitled to explore the plaintiff's knowledge in the premises. If the plaintiff had

admitted what the defendant believed to be the fact, material and relevant evidence upon the issue at hand would have been adduced. ■ Furthermore, the defendant was entitled to rebut the inference that Officer Irey's action in stopping the plaintiff was motivated by personal animosity, which in turn would motivate the officer's testimony in the case, by showing that the plaintiff had been stopped by other officers for the same reason that he had been stopped by Irey. The plaintiff's intention to convey the impression that he was the subject of such harrassment is made more evident by his voluntary statements that Officer Irey stopped him on three occasions because of alleged defective muffler violations, and that he never was convicted of such a violation in connection with his truck. The cross-examination with respect to the stopping incidents in which Irey participated also was material and relevant to the competency issue heretofore noted.

■ Evidence affecting the credibility of a witness, including that tending to show a motive for his testimony, is material to the determination of a question of fact, even though it involves an inquiry into collateral matters. (Code Civ. Proc. § 1868; *People* v. *Brown*, 168 Cal.App.2d 549, 553 [336 P.2d 1].) Conversely, evidence tending to rebut the existence of an alleged motive is material. ■ Where the purpose of cross-examination is to develop such evidence by relevant inquiries, the scope of that examination is subject to the discretion of the trial court and its action in the premises, absent a showing of abuse of that discretion, will not be interfered with on appeal. (*People* v. *Winston*, 46 Cal.2d 151, 157 [293 P.2d 40]; *People* v. *Wissenfeld*, 36 Cal. 2d 758, 765 [227 P.2d 833].)

■ "The general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue." (*People* v. *Jones*, 42 Cal.2d 219, 222 [266 P.2d 38].)

■ In the instant case, the inquiry, which sought to develop evidence to rebut the inferential attack upon the credibility of witness Irey, was directed to a material issue. In the course of that inquiry, the questions which attempted to elicit evidence to establish the fact that the plaintiff had been stopped by officers on other occasions, because of loud exhaust noises coming from his truck, were foundational to other questions attempting to elicit evidence to establish the

further fact that on these occasions he got out of his truck and, upon listening, heard these noises. Such evidence would have been relevant proof in rebuttal of the plaintiff's testimony from which it might have been concluded that Irey's testimony was the product of a "personal vendetta" and untrustworthy.

Furthermore, the interrogation in question was relevant to the issue of the plaintiff's credibility as a witness. If he had been stopped on a number of occasions by police officers and unjustly accused of alleged traffic violations, it might be inferred that his accusation of negligence against Officer Irey, his suit against the city as the employer of police officers, and his claim respecting the extent of his injuries were products of a desire to get even; that his testimony was colored accordingly; and that it did not accurately relate the true facts.

The scope of the subject cross-examination was subject to the discretion of the trial court, and no abuse thereof appears from the record at hand.

The plaintiff also objects to that part of his examination wherein he was questioned concerning an injury to his leg, when he accidentally shot himself; about a fight in which he had engaged; and about a claim that he filed seeking workmen's compensation for injuries sustained since the subject accident. The shooting incident was first mentioned by the plaintiff; the fighting event by his medical witness; and the cross-examination merely elaborated on some of the details which were pertinent to the issue of damages. It appears that the plaintiff shot himself while engaged in target practice. At the time of this incident, according to his testimony, his injured shoulder was weak; caused him great pain; and prevented him from doing the kind of work he had been accustomed to do. His ability to engage in target practice was pertinent to the issue respecting the claimed extent of the shoulder injury. In the fighting incident, he was pushed; fell down; injured his leg; and was required to use a crutch for two days. The injury sustained in this encounter, his ability to engage in such, its effect upon his shoulder, and its relation to his claimed working incapacity, were relevant to the extent of the injuries allegedly sustained as a result of the subject accident. The workmen's compensation inquiry also was directed to the issue of injury and damage. Furthermore, there was no objection to the latter inquiry at the time of trial, and it may not be raised on

appeal. *(People* v. *Millum,* 42 Cal.2d 524, 526 [267 P.2d 1039]; *Cowan* v. *Bunce,* 212 Cal.App.2d 48, 55 [27 Cal.Rptr. 758].)

 Even though it be assumed that the court erred in overruling the plaintiff's objections to his cross-examination in the areas heretofore considered, the error was not prejudicial. The plaintiff claims that this cross-examination implied that he was a continuous law violator and a violent man who had shot himself and participated in a fight. The plaintiff volunteered the statement: "I have never been convicted of a muffler violation on this car [the truck in question]." He also testified that he was found not guilty on the citation given him by Irey at the time of the October 6th incident. On the other hand, the defendant adhered to the admonition of the court that it was not to inquire concerning any traffic violation conviction. As a consequence, the plaintiff's testimony was unchallenged. It is not probable that the jury drew the conclusion from the subject cross-examination that the plaintiff indicates it might have drawn. Furthermore, there is little likelihood that this examination influenced the jury's decision on the issue of liability. Irey was charged with negligence for having accelerated the plaintiff's motor without first determining that the transmission was in gear, i.e., in "drive" position. However, the evidence is without conflict that the plaintiff got out of his truck under circumstances indicating that he knew Irey was going to accelerate the motor to test it for exhaust noises; knew the transmission was in gear; left the motor running; set the emergency brake, but did not change the gear shift to "neutral"; stood opposite the truck while, according to his testimony, he watched Irey get into the truck; and rested his arm on the top of the open door, which was a position of danger should the truck lurch ahead. If the jury found that Irey was guilty of negligence in failing to ascertain that the truck was in gear before accelerating the motor, it would appear very probable that it also found the plaintiff was contributorily negligent in leaving the truck in gear and assuming a position of danger knowing that Irey intended to accelerate the motor.

After a consideration of the whole record, including the evidence, we have concluded that it is not probable the verdict of the jury would have been in favor of the plaintiff if his objections to the cross-examination in question had been sustained. Under these circumstances any alleged error in

overruling such objections was not prejudicial. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Griffin, P. J., and Brown (Gerald), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1964.