[Crim. No. 5829. First Dist., Div. One. Sept. 20, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JESSE WILSON, Defendant and Appellant.

Francis C. Stockum, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Lawrence R. Mansir, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J. — Defendant Jesse Wilson was found guilty by a jury of assault with a deadly weapon with intent to commit murder (Pen. Code, § 217). The court thereafter ordered the conviction reduced to that of assault with a deadly weapon (Pen. Code, § 245a). From an order granting probation this appeal is taken.

At the trial substantial evidence in support of the charge was introduced by the prosecution. Defendant does not contend otherwise.

█ The first assignment of error is stated as: *Appellant was denied the constitutional privilege against self-incrimination.*

In an obvious attempt to establish that he could not have been driving his car at the time and place of the alleged assault as indicated by prosecution evidence, defendant testified he had loaned his car to a Miss Rockmore some hours earlier. On cross-examination he was asked if he had driven the car to Miss Rockmore's house. The question was objected to on the ground that the answer might tend to incriminate him on a charge of driving with a suspended or revoked driver's license.[1] The objection was overruled and the defendant answered that he had so driven his car.

The question of the district attorney was clearly relevant, and it was proper cross-examination. "A defendant in a criminal action . . . cannot be compelled to be a witness against himself; but if he offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief. . . ." (Pen. Code, § 1323; see also *People* v. *Zerillo*, 36 Cal.2d 222, 227-229 [223 P.2d 223]; *People* v. *Teshara*, 141 Cal. 633, 638 [75 P. 338].)

The defendant's Fifth Amendment rights were not violated. By taking the stand and testifying on the subject matter to which his claimed rights related he waived them. *Brown*

---

[1]Earlier on cross-examination the defendant had testified without objection that he had driven a car during September and October 1965. The assault was alleged to have occurred October 2, 1965, and no attempt was made by defendant to keep the objection and discussion relating to his driver's license from the hearing of the jury.

v. *United States*, 356 U.S. 148, 155-156 [2 L.Ed.2d 589, 597,.78 S.Ct. 622, 72 A.L.R.2d 818] states "[One] cannot reasonably claim that the Fifth Amendment gives him not only this choice [of testifying to his own version of the facts] but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." (See also Witkin, Cal. Evidence (2d ed. 1966) Witnesses, § 935, pp. 871-872.)

■ Defendant's second assignment of error is: *Appellant was prejudiced by the improper admission of testimony of witness Henry Broussard.*

Prosecution evidence indicated that the victim of the assault, Herman George, had been shot in the arm in the early morning hours of October 2, 1965. Defense witness Cottonham testified that a "little bit" after midnight, October 2, 1965, while parked in a car near 1125 Pierce Street (a considerable distance from the scene of the shooting as fixed by the prosecution) he saw three people in an automobile. They were Yvonne Rogers, Herman George and an unidentified third man (not the defendant) who was the driver. Herman George got out of the car, there was a sound like a shot or backfire of a car, and he grabbed his arm. The other parties then got out of the car and all three walked into 1125 Pierce Street which is the apartment house where Yvonne Rogers lived. Fifteen or twenty minutes later Henry Broussard, Yvonne's only brother, drove up, parked his car, got out, and he also walked into the building at 1125 Pierce Street.

Thereafter the defense rested. The prosecution presented rebuttal witnesses and rested. Defense rebuttal witnesses were then put on the stand. They were followed by more prosecution rebuttal witnesses who in turn were succeeded by a defense witness. Up to this point no objection was made by either side to the order in which witnesses were called. Then Henry Broussard was called to the stand by the People. He testified that on the evening of October 1, 1965, he worked as a cabdriver, that he arrived home at about 12:45 the next morning, and that he did not on the evening of October 1 or the early morning of October 2 go to 1125 Pierce Street.

Defendant contends that since Broussard's testimony was in no way related to the testimony of the defense witness who immediately preceded him it was not proper. He insists the testimony was reserved by the prosecution for the purpose of

making a last minute dramatic appeal·to the jury and that he did not have the opportunity to investigate Broussard's statements. He relies upon *People* v. *Carter,* 48 Cal.2d 737 [312 P.2d 665], from which he quotes the following (p. 753) : "The purpose of the restriction [cf. Pen. Code, § 1093, subd. 4] is to assure an orderly presentation of evidence so that the trier of fact will not be confused; to prevent a party from unduly magnifying certain evidence by dramatically introducing it late in the trial; and to avoid any unfair surprise that may result when a party who thinks he has met his opponent's case is suddenly confronted at the end of trial with an additional piece of crucial evidence."

We first point out that no objection appears to have been made to the introduction of the complained of testimony. The error, it it be error, was therefore waived and defendant may not now complain.[2] " [A] reversal would not be justified by reason of any incorrect order of proof where no objection thereto was interposed in the trial court." (*People* v. *Alvarez,* 212 Cal.App.2d 406, 409 [28 Cal.Rptr. 141] ; see also Witkin, Cal. Evidence (2d ed. 1966) § 1285, p. 1188.) In any event, if the quoted language (fn. 2, *ante*) does disclose an intent to object, as stated in *People* v. *Carter, supra,* 48 Cal.2d 737, 754, "since defendant did not make completely clear to the trial court the objection that he now argues, we would not be justified in finding that there has been an abuse of discretion."

[2] The record shows the following colloquy concerning witness Broussard between court and counsel: "MR. PERASSO [defense counsel]: We rest. THE COURT: Do you rest? MR. SHAW [deputy district attorney]: One second. I don't like to incur Your Honor's wrath, but I would like to call one further witness. THE COURT: You won't incur my wrath. If you have another witness, call him. MR. SHAW: Step forward, please, Mr. Broussard. MR. PERASSO: Now, just a point of order, so we understand what the problem—what the testimony is here. Number one, this is the case in chief I will assume? THE COURT: This is his case in chief? MR. PERASSO: This is or is not? I would like that clarified. MR. SHAW: I am not sure at this point. THE COURT: Somebody said before that's a good answer: MR. SHAW: Good question, Your Honor, good question. THE COURT: You assume wrong. He just said he doesn't know. MR. SHAW: No. I was making a feeble attempt to be facetious, Your Honor. THE COURT: What is it then? The inquiry is made and there is a reason for it, as you are well aware. Is this rebuttal or your case in chief? MR. SHAW: I think it would be properly the case in chief, Your Honor. MR. PERASSO: I'm sorry. I would have to lodge a formal objection. MR. SHAW: This is Mr. —— MR. BROUSSARD: Broussard. MR. SHAW: Henry Broussard, the witness you had referred to, Mr. Perasso. MR. PERASSO: Well then, it would be proper rebuttal, but we are past the rebuttal status, as I understand it, at this status of the case, but if this is Mr. Henry George Broussard ——."

Even had proper objections been made we consider that the trial court, in its discretion might properly have allowed Broussard's testimony. It was concededly rebuttal testimony. (See fn. 2, *ante*.) It would not have been proper as part of the prosecution's case in chief, as the evidence which was the subject of *People* v. *Carter, supra,* 48 Cal.2d 737, would have been. We do not find here an "additional piece of crucial evidence" or a magnification of evidence or unfair surprise, as in *Carter*. Nor do we see any prejudice resulting from deferring this rebuttal testimony until after an extra round of rebuttal witnesses had testified.

Defendant contends if there was no objection to Broussard's testimony, then he did not receive adequate representation and that under the rule of *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], his conviction must be reversed. To justify *Ibarra* relief on the ground of constitutionally inadequate representation by counsel an extreme case must be disclosed. It must appear that counsel's lack of diligence reduced the trial to a farce or a sham. Defendant has the burden of establishing his allegation of inadequate representation not as a matter of speculation but as a demonstrative reality. (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal. Rptr. 691, 415 P.2d 35]; see also *People* v. *Ibarra, supra,* at p. 464.) We have read the record of the trial. Defendant was ably represented by an experienced trial lawyer. The criteria of *Ibarra* and *Reeves* as to inadequate representation are here wholly inapplicable.

The district attorney may have had a reason, known to defense counsel and believed by him to be probably acceptable to the court, for not being able to present the witness sooner. More likely the failure to object was simply a manifestation of an often extended courtesy of counsel on matters not involving prejudice or important client's rights. Having witnesses in court, and on time, is a prime concern of the trial lawyer. Reasonable and reciprocal consideration of this problem by counsel is usually of benefit to both sides. Indeed it seems to have been of substantial benefit to the defendant here. Defendant's last so-called rebuttal witness testified without objection to matters which were not proper rebuttal and which, under Penal Code section 1093, should have been offered in defendant's case in chief.

The final assignment of error follows: *It was prejudicial error not to allow appellant to show bias of prosecution witness, Yvonne Rogers.*

The testimony rather conclusively indicated that Herman George had supplanted defendant in the affections of Yvonne Rogers. At the trial she showed friendship for George and animosity toward defendant. Her direct testimony related almost entirely to the manner in which defendant had annoyed her over a period of time, even to the point where she had called the police.

Defense counsel on cross-examination attempted to question Miss Rogers as to the details of her relationship with Herman George. This inquiry was interrupted on the district attorney's objection. The court thereupon in the jury's presence summarized the evidence as to the witness's bias as follows: ". . . to inquire into the intimate bedroom details [or] any of them would serve no purpose, except to embarrass this witness, and I don't think I am going to—I know that I am not going to permit it. . . . [Y]ou could argue that she is biased in favor of Herman George. . . . She dates him, has dated him. She has been with him on numerous occasions, according to the testimony. . . . When the defendant came around she called the police car, according to the testimony, and said this man is bothering me. So there is no need to show any predilection of this lady to favor Herman George and to be antagonistic to the defendant. She tells you that. She said, I was dating George. I would like to be let alone while I am doing it. The defendant constantly bothered me, wrecked my furniture, broke my window, poured oil and water in my door. The jury doesn't have to be told that she is prejudiced against the defendant. . . . If what she is saying is the truth and they believe it they know she is prejudiced against the defendant with a very justifiable prejudice. . . . So I want you to move into other fields.''

It is of course proper on cross-examination to inquire into bias or improper motives of a witness (*People* v. *Vanderburg,* 184 Cal.App.2d 33, 41 [7 Cal.Rptr. 287]; *People* v. *Homan,* 103 Cal.App. 161, 163 [284 P. 252].) However, the extent of cross-examination of a witness for purposes of impeachment rests very largely in the discretion of the trial court. (*People* v. *Winston,* 46 Cal.2d 151, 157-158 [293 P.2d 40]; *Goody* v. *City of El Cajon,* 223 Cal.App.2d 259, 266 [35 Cal.Rptr. 896].) An inquiry into bias of a witness may properly be curtailed when the bias has been sufficiently established (*People* v. *Worthington,* 122 Cal. 583, 589 [55 P. 396]) and when the court determines that the point is merely cumulative (*Keim* v.

*D. B. Berelson & Co.,* 105 Cal.App.2d 154, 163 [233 P.2d 123]).

We believe the refusal of the court to permit further cross-examination as to the bias or motive of the witness was well within its discretion, and proper.

The order granting probation is affirmed.

Molinari, P. J., and Sims, J., concurred.