[Crim. No. 10254. First Dist., Div. One. Feb. 13, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
MELVIN C. WILLIAMS, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Karl S. Mayer, John T. Murphy and Ira J. Ross, Deputy Attorneys General, for Plaintiff and Appellant.

James C. Hooley, Public Defender, and Richard L. Howard, Assistant Public Defender, for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—An information charging two counts of aggravated assault (Pen. Code, §§ 217 and 245) was dismissed by the superior court on defendant Melvin C. Williams' contention that an 18-month delay between the filing of the complaint and his arrest deprived him of his constitutional right to a speedy trial. The People have appealed.

It will be seen that we are concerned with what might be called "post indictment-prearrest" delay in the prosecution of one accused of crime.

■ The trial court ruled that an inference of "some prejudice" resulted to Williams from the long delay as a matter of law, and that the burden shifted "to the People to show sufficient reason for the delay." In this the court correctly applied the law. *Barker* v. *Municipal Court*, 64 Cal.2d 806, 812 [51 Cal.Rptr. 921, 415 P.2d 809], in the context of a long post indictment-prearrest delay, states: "When there has been an extended delay in bringing a defendant to trial, 'it is not necessary that the party accused affirmatively show prejudice. . . . It is enough for the defendant to show that the prosecution has been unreasonably delayed. It will not be presumed that good cause for the delay in fact existed. If there was any good cause it was for the prosecution to show it.' . . ." (See also *Jones* v. *Superior Court*, 3 Cal.3d 734, 739, 740 [91 Cal.Rptr. 578, 478 P.2d 10]; *People* v. *Archerd*, 3 Cal.3d 615, 640 [91 Cal.Rptr. 397, 477 P.2d 421]; *Harris* v. *Municipal Court*, 209 Cal. 55, 64 [285 P. 699]; but see *People* v. *Bethea*, 18 Cal.App.3d 930, 939 [96 Cal.Rptr. 229], holding that the defendant must show the prejudicial effect of the delay.)

On his motion to dismiss, Williams offered no admissible evidence. The People made the following showing in justification of the delay.

Investigating a shooting in the City of Berkeley on July 5, 1969, a police officer was told that the offense had been committed by one Melvin C. Williams. A house was pointed out as the place where the suspect lived, but the landlady there said she did not know him. After further questioning, however, she admitted that he did live in a rented room on the premises. Several pieces of mail addressed to Melvin C. Williams were seen by the officer, but Williams himself was not to be found. One or two days later the officer returned; this time he was told that Williams had moved out. He had the impression that the suspect "had moved for good." The officer promptly made out a police report and discussed the case with a police inspector to whom the case had been assigned.

A warrant for Williams' arrest was issued July 14, 1969.

On July 16, 1969, information that Williams was wanted was placed on "PIN," the Police Information Network. This is a San Francisco Bay Area computer network containing information of wanted persons in the area. It is available by radio to all police officers and furnishes the required information in as little as four seconds. It is a common practice to use the system "when a person is stopped for instance, for questioning or a traffic stop or for identification or for some other police purpose." The

network contained records of 20,000 arrest warrants of the City of Berkeley and a total of 300,000 from the entire bay area.

On July 17, 1969, a "Wanted Notice" for Williams was prepared by the police department. It is common knowledge that such notices containing details of a crime with a description, and when as here available a picture, of the suspect are circulated at least throughout the local police department.

A police officer who testified at the dismissal hearing said that he carried Williams' "picture with me, keeping the name and the picture in mind during the regular course of duty." Another policeman had told this officer on some undisclosed date "that he thought Melvin Williams [was] out of the city and gone on a merchant seaman trip."

The two officers who testified at the hearing had not checked Williams' whereabouts with the post office, or the State Motor Vehicle Department, or the seaman's union. One of them, asked if others had done so, had no knowledge whether they had or not.

On November 24, 1970, Williams not being found in the bay area, a stop was placed with the CII (Division of Criminal Identification and Investigation) at Sacramento. "[T]he purpose for placing a CII stop is to assure that should this defendant be arrested in some other jurisdiction outside the scope of the PIN network that the fact of his being in custody would come to our attention."

Williams was arrested January 23, 1971.

█ In order that a criminal charge be dismissed for post indictment-prearrest delay, it is not enough that prejudice alone exist. *The delay must also be unreasonable. Jones* v. *Superior Court, supra,* 3 Cal.3d 734, concerned a 19-month post indictment-prearrest delay. The court held (p. 740): " 'Delays necessary for reasonable law-enforcement operations will not violate the right to a speedy trial. The conduct of law-enforcement officials would be affected only if they unreasonably delayed initiating a prosecution.' . . ." The rule is much the same as with a delay between the commission of an offense and issuance of the warrant of arrest. There also, although the burden of proof differs, to justify dismissal of a criminal charge it must be established "[1] that there was no legitimate reason for the delay, and [2] that [the accused] was prejudiced by the delay." (*People* v. *Wright,* 2 Cal.App.3d 732, 737 [82 Cal.Rptr. 859]; *Powell* v. *United States,* 352 F.2d 705, 708.)

The language of *Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 740— "The prejudicial effect of the delay on petitioner must be weighed against

any justification for the delay"—in no way abridges the stated rule of that case that "Delays necessary for reasonable law-enforcement operations will not violate the right to a speedy trial. . . ." In the context the meaning is clear, that prejudice to the accused will be weighed against the degree of fault (and hence the degree of unreasonableness if any) of the law enforcement authorities.

Some prejudice to Williams being presumed, the issue before us is whether the People had met their burden of showing sufficient reason for the delay.

We refer to some of the applicable principles.

It has often been emphasized "that in considering the legal consequences of a denial of a speedy trial it should be kept in mind that we are dealing *not with a favored right* such as the right 'to appear and defend, in person and with counsel.' . . ." (Italics added; *People* v. *Wilson,* 60 Cal.2d 139, 148 [32 Cal.Rptr. 44, 383 P.2d 452].) And the passage of time alone, while as indicated it may create a presumption of prejudice, is not to be equated with unreasonable delay. (*People* v. *Wright, supra,* 2 Cal.App.3d 732, 736; *People* v. *Alvarado,* 258 Cal.App.2d 756, 759 [66 Cal.Rptr. 41].)

Along with the right of an accused to a speedy trial the public right to suppress crime and prosecute malefactors must be considered. It is said: " 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice. . . .' " (*United States* v. *Ewell,* 383 U.S. 116, 120 [15 L.Ed.2d 627, 631, 86 S.Ct. 773]; *Beavers* v. *Haubert,* 198 U.S. 77, 87 [49 L.Ed. 950, 954, 25 S.Ct. 573].) This concept is recognized in *Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 740, where, as we have pointed out, it is said: "Delays necessary for reasonable law-enforcement operations will not violate the right to a speedy trial. . . ."

*People* v. *Archerd, supra,* 3 Cal.3d 615, 641, tells us that courts should not *lightly* engage in "the inquisitorial function of scrutinizing the internal operations of law enforcement agencies" in cases of prosecutorial delays. In the same vein it was said in *Kaikas* v. *Superior Court,* 18 Cal.App.3d 86, 90 [95 Cal.Rptr. 596]: "[W]e must recognize that the duties and functions of a police officer are so varied and numerous as to require the constant exercise of discretion in the setting of priorities in his day-to-day work. Emergencies and other unexpected immediate demands upon his time can easily cause interruption of scheduled or planned activities of what might be called routine investigation. [¶] It is perhaps an unfortunate.

but nonetheless existing, fact of life in a democratic society that only so much time, manpower and money can be expended toward any single criminal case. . . ." The point is well illustrated by the instant case. The City of Berkeley has a police force of 184 officers, each of whom works a 40-hour week. Were but 10 minutes of time spent weekly on each of the city's 20,000 outstanding warrants, half of the police manpower would be expended solely in that effort. Twenty minutes of such time would foreclose any other type of police activity.

■ The purpose of the constitutional speedy trial provision is " ' "to protect those accused of crime against possible delay, *caused either by willful oppression, or the neglect of the state or its officers.*" . . .' " (Italics added; *Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 738.) It has accordingly been held that before a delay may be deemed *unreasonable,* it must appear that it was *"purposeful or oppressive"* (italics added; *Pollard* v. *United States,* 352 U.S. 354, 361 [1 L.Ed.2d 393, 399, 77 S.Ct. 481]; *People* v. *Archerd, supra,* 3 Cal.3d 615, 640), or was the result of law enforcement *negligence* (italics added; *People* v. *Mitchell,* 8 Cal.3d 164 [104 Cal.Rptr. 348, 501 P.2d 916]; *Barker* v. *Municipal Court, supra,* 64 Cal.2d 806, 811, 815).

We have closely examined the several California authorities where relief was granted the accused because of post indictment-prearrest delays. In each of them, oppression or negligence or both clearly appearing, the prosecution had failed to meet the burden of excusing the delay. *People* v. *Mitchell, supra,* 8 Cal.3d 164, concerned a 13-month delay occasioned by lack of any effort whatever to apprehend the accused, whose whereabouts were known or reasonably should have been known to the authorities. The 19-month delay of *Jones* v. *Superior Court, supra,* 3 Cal.3d 734, transpired while the authorities, knowing Jones' home address where he could readily be found, unaccountably made no attempt to execute the warrant. In *Barker* v. *Municipal Court, supra,* 64 Cal.2d 806, the authorities delayed 18 years while the accused was in a federal prison, before making any attempt to execute the warrant and bring him to trial. The federal authorities had indicated a willingness that their prisoner be brought to this state for trial; they "even appeared to press the California authorities toward that end. . . ." (P. 815.) The court found that the "delay was of the type 'caused either by willful oppression, or the neglect of the state or its officers.' . . ." *Harris* v. *Municipal Court, supra,* 209 Cal. 55, concerned a delay where, although admittedly the whereabouts of the accused were readily ascertainable, "the warrant of arrest was *intentionally* withheld from service by the prosecuting officer for eighteen months; . . ." (Italics added, p. 63.) And in *Wilson* v. *Superior Court,* 125 Cal.App.2d

749, 750 [271 P.2d 156], the prosecution did "not make the slightest showing of an effort to apprehend the petitioner over the period of more than one year after the indictment. . . ."

█ We find no authority where on a showing such as was made in the instant case oppression or negligence of the prosecuting officers was found.

The narrow issue before us thus appears to be whether the prosecution produced substantial evidence that the delay was not unreasonable or, in other words, not caused either by *willful oppression* or the *neglect* of the state or its officers.

Certainly there was no *willful oppression*; nor is such oppression claimed by Williams.

From the information made known to the police they could reasonably conclude, as they did, that Williams who had hastily vacated his room, was a fugitive. They had no information as to where he could be found. The officers of the local police force were circularized with a wanted notice describing Williams and his alleged crime. The same information was made available to all bay area officers through the police information network. This, the other undisputed evidence we have mentioned, and the remaining circumstances of the case, point to nothing that may reasonably be considered *negligence* of the state or its officers. While (quoting *Kaikas* v. *Superior Court, supra,* 18 Cal.App.3d 86, 90) "from the panoramic vantage of hindsight it can be argued that more effort or different means might have been employed" to apprehend Williams, hindsight does not make such prosecutorial effort as was made, unreasonable.

We must conclude that the People met their burden of establishing neither unreasonableness, nor oppression, nor negligence in Williams' delayed arrest. There was no substantial evidence, nor any evidence, to the contrary. The trial court accordingly erred in dismissing the information.

█ Another facet of the dismissal proceedings in the superior court should be discussed.

On his motion to dismiss, Williams offered his declaration under penalty of perjury as evidence. As relevant the declaration stated: "[Since 1968] I was residing at 2782 Sacramento Street in Berkeley [this is not the address of the rooming house described by the officer where mail addressed to Williams was seen] with my aunt, Henrietta Clark. That at all times since then that address has been my mailing address. On June 19, 1970, I was issued California driver's license number E626721 showing that as

my address. [¶] I have been intermittently employed as a merchant seaman and have on various occasions been out of the country in the course of such employment; however, I have been informed and I believe that no attempt has been made to serve said warrant on me at that address."

The People objected to the declaration unless Williams took the stand and stood cross-examination as to its contents. Such cross-examination was refused. The objection was thereupon sustained and the declaration was not allowed in evidence. It seems to be in the interest of justice that we pass upon this ruling.

■ It is a commonly known rule that no witness, even a defendant in a criminal case, will be permitted to testify concerning a matter while refusing cross-examination as to the same matter. In such situations the constitutional privilege against self-incrimination as to the subject matter of his direct examination is deemed waived. (See *People* v. *Perez,* 65 Cal.2d 615, 621 [55 Cal.Rptr. 909, 422 P.2d 597]; *Unruh* v. *Nelson,* 212 Cal. 130, 132-134 [297 P. 888]; *People* v. *Freshour,* 55 Cal. 375; *People* v. *Wilson,* 254 Cal.App.2d 489, 491-492 [62 Cal.Rptr. 240]; *People* v. *Stone,* 239 Cal.App.2d 14, 19 [48 Cal.Rptr. 469]; *People* v. *Di Georgio,* 185 Cal.App.2d 413, 420-421 [8 Cal.Rptr. 295].) As said in *Brown* v. *United States,* 356 U.S. 148, 155-156 [2 L.Ed.2d 589, 597, 78 S.Ct. 622], "[One] cannot reasonably claim that the Fifth Amendment gives him not only this choice [of testifying to his own version of the facts] but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. . . ."

■ Had Williams *testified* on the witness stand this rule would certainly have applied. No good reason appears why his election to testify on the subject by way of a declaration under penalty of perjury should place him in a more favorable position as to "matters he himself has put in dispute." Of course in such a situation judicial care should be exercised to see that the cross-examination is limited to the "scope of the direct examination [here the declaration under penalty of perjury]." (Evid. Code, § 761.) The trial court properly rejected the declaration.

For the reasons stated the order dismissing the information is reversed.

Molinari, P. J., and Weinberger, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.