[Crim. No. 18356. First Dist., Div. Three. Aug. 24, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD IKE ALLEN, JR., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Harriet Wiss Hirsch and Carol Jean Ryan, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Alvin J. Knudson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FEINBERG, J.—Appellant was charged by information with a violation of Penal Code section 475a (possession of a completed check with intent to defraud). Thereafter he filed a motion to dismiss for denial of right to speedy trial. A two-day evidentiary hearing was held, at the conclusion of which the motion was denied.

Appellant waived his right to trial by jury and submitted the matter on the transcript of the preliminary examination. He was found guilty as charged. His appeal is now before us, raising the sole issue that appellant was denied a speedy trial.

*The Facts*

Some checks were stolen from the business office of the College of Marin. On November 11, 1976, an individual attempted to cash one of the checks at a branch of the Bank of America in Novato, Marin County. The check was made out to "Edward Allen" and bore the forged signature of the college's business officer. A teller refused to cash the check because the individual had only one piece of identification. Later that day, the same, or conceivably a different individual, presented the check and two pieces of identification, a driver's license and a fishing license, to another teller who, after having compared the photograph and signature on the driver's license to the appearance of the individual and the endorsement on the check, cashed it. A few days later, the first teller identified appellant from photographs as the person who attempted to cash the check and did so as well when conditionally examined under

Penal Code section 1335. It does not appear that she ever identified appellant "in person," because she did not testify at the preliminary examination and appellant waived his right to be present at the conditional examination. The second teller, however, could not identify appellant as the utterer of the check. The check had appellant's name written on it, the address of 550 Weber Lane, Santa Rosa,[1] and a telephone number.

On the motion to dismiss, the evidence taken indicated the following: In November and December 1976, a sergeant for the Novato Police Department (Marin County) called the number twice and spoke to an unidentified person who informed him that appellant was not present but that he would give appellant a message to call the sergeant. Appellant did not return the call. The sergeant received a copy of appellant's driver's license showing his address to be 1 Laredo, Rohnert Park. On the basis of these facts, the sergeant "felt that either Mr. Allen was not at that address or the persons at that address were harboring Mr. Allen," so he did not visit it.

The sergeant wrote a report and sent it to the Department of Justice which sent him a report in January 1977. These reports were sent by the sergeant to the Marin County District Attorney's office which filed a complaint and obtained an arrest warrant in March 1977.

A warrants clerk for the Novato Police Department received the warrant and information from the sergeant that there was no current address for appellant. She checked the available computer systems and found only the Weber Lane address. Accordingly, she did not direct service of the warrant but entered it into the "PIN" and "CLETS" computer networks. On May 7, 1977, she checked again for a different address for appellant and found none. She did the same in November 1977. The result was the same, causing her to conclude that, if appellant were not living at the Weber Lane address, he continued to use it. She therefore requested the Sonoma County Sheriff to attempt service of the warrant at that address. A deputy went to that address in November or December 1977 and finding no one at home inquired of "a couple neighbors" who did not seem to know appellant.

Appellant was arrested in Sonoma County on other warrants in January 1978. He was in custody for 12 days. No computer check was

---

[1]The name and address on the check corresponded to the name and address on the driver's license presented for identification and which, it may be noted, was also the address of appellant's father, Edward Ike Allen, Sr.

done for other outstanding warrants.[2] Appellant gave as his address at that time 550 Weber Lane.

In February 1978, the Novato warrant clerk learned of the January arrest and again requested Sonoma County to serve the warrant. A deputy went to 550 Weber every day from February 21 to 25, 1978, and on the last day spoke to appellant's father who informed him that appellant did not always stay there but was living in the Petaluma area. On March 1, 1978, the deputy, who was able to recognize appellant on sight, arrested him at a grocery store in Santa Rosa a couple of blocks from his father's home. Appellant gave the Weber Lane address.

Appellant testified that he was living with his father at 550 Weber at all relevant times except between June and November 1977, when he lived and worked in Nevada (during which time he kept his father informed of where he was staying and "called him about once a week.") Appellant's testimony was confirmed by his father. The father also testified that at some unspecified time, appellant spent a few months with his (appellant's) brother in Petaluma at an address known to the father and remained in daily contact with him. Appellant testified that he stayed with his brother a day or two at a time while living with his father.

Appellant testified further that not until March 1978 did he know of the March 1977 warrant. Appellant was not asked either on direct or on cross-examination any questions as to how he had been prejudiced by the delay. Thus there was no evidence at all of any actual prejudice to appellant before the court.

The trial court, in denying the motion to dismiss, stated, "I think, somewhat reluctantly, because I don't know whether there's that much excuse for the delay here and certainly more could have been done—I don't think it's sufficient to dismiss the case for lack of prosecution."

█ Appellant claims that he has been deprived of due process of law and his right to a speedy trial because of the delay, approximately 16 months, between the commission of the crime and his arrest. In his argument, appellant, though recognizing the constitutional distinction between precomplaint delay and preindictment delay, i.e., between due process rights and speedy trial rights, glides over certain distinctions and treats both kinds of delay as though they were one.

---

[2]Sonoma County is not a member of the PIN computer network though it is, of course, a part of the statewide CLETS system.

We proceed to discuss the law on the effect of state delay in the initiation and prosecution of a criminal charge as it impinges on the defendant's right to due process and speedy trial. Our discussion will focus primarily on the issue of prejudice.[3] For analytical purposes, we deal with each constitutional right separately.

## I. *Delay and Due Process of Law*

■ The law is clear that a delay between the commission of a criminal offense and the arrest of or the filing of a criminal charge against the alleged perpetrator (whichever comes first)[4] may operate to deprive the defendant of due process but it does not involve speedy trial constitutional issues of law. (*People* v. *Archerd* (1970) 3 Cal.3d 615, 639-640 [91 Cal.Rptr. 397, 477 P.2d 421].) In such a case, the accused must "show two things in order to invoke an exercise of the court's supervisory power because of alleged basic 'unfairness' resulting from claimed delay in his arrest: that there was no legitimate reason for the delay, *and that he was prejudiced by the delay. Appellant bears the burden of establishing such claim.*" (Italics added.) (*Id.,* at p. 640.) Recently, in *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493 [149 Cal.Rptr. 597, 585 P.2d 219], the holding in *Archerd* was affirmed though phrased in different terms. There, the court said, "We reject defendant's suggestion that we hold a presumption of prejudice arises whenever there is a delay between the commission of a crime and the time a formal charge is filed." (*Id.,* at p. 504, fn. 8.)

Ultimately, in determining whether a defendant has been denied a "fair trial," i.e., due process, the trial court must weigh the justification for the delay against the prejudice suffered by the defendant by reason of the delay. (*Scherling* v. *Superior Court, supra,* 22 Cal.3d at p. 505.)

---

[3]As will develop, in the case at bench, it is the fact of prejudice or the lack thereof that is determinative of our decision.

[4]So that there may be no confusion as to the meaning of the terms we use in the context of this case:

a. Precomplaint delay means the time between the commission of the offense and the time the defendant was charged or arrested, whichever came first.

b. Prearrest delay means the time between the filing of the complaint and the arrest of the defendant.

c. Postindictment delay means a lapse of time of more than 60 days between the filing of an indictment or information and trial.

Further, in speaking of delay, we leave aside delay deliberately caused by the state for some improper or oppressive purpose. We restrict ourselves to delay which may have occurred by reason of negligence on the part of the state, as in the case at bench.

## II. *Delay and Speedy Trial*

A. ■ *Postindictment Delay.*[5] It is equally clear that where there is postindictment delay, prejudice to the defendant is presumed. The burden is then upon the People to show good cause for the delay. If the People cannot show good cause, then the defendant has been denied a speedy trial and the action must be dismissed; there is *no* balancing of the justification for the delay against the prejudice to the defendant. But prejudice is presumed in such a situation because the Legislature has implemented the speedy trial guaranty of the California Constitution (art. I, § 15) and Penal Code section 686, subdivision 1, by enacting Penal Code section 1382, subdivision 2, providing that a defendant must be brought to trial within 60 days of the indictment or information, and if not so brought to trial, the action must be dismissed unless good cause is shown to the contrary. (*Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90]; *Harris* v. *Municipal Court* (1930) 209 Cal. 55, 61 [285 P. 699].)

B. ■ *Prearrest Delay.* California has extended the protection of the guaranty of a speedy trial under the state Constitution to the prearrest stage. (*Jones* v. *Superior Court* (1970) 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10]; *People* v. *Hannon* (1977) 19 Cal.3d 588 [138 Cal.Rptr. 885, 564 P.2d 1203]; *Scherling* v. *Superior Court, supra,* 22 Cal.3d 493, but see the federal rule in *United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455].)

The prejudice to the defendant is to be weighed against the justification for the delay to determine whether the defendant has been denied a speedy trial. (*Jones* v. *Superior Court, supra,* at p. 740; *People* v. *Hannon, supra,* at p. 608; *Scherling* v. *Superior Court, supra,* 22 Cal.3d at p. 505.) But is prejudice to be *presumed* or must the defendant show *actual* prejudice?

This brings us to the heart of the problem. ■ Appellant asserts that when there is prearrest extended delay, prejudice is presumed and the trial court must balance the justification for the delay against the presumed prejudice. If appellant is correct, then there exists three different rules of law governing the effect of delay:

---

[5]Though there is no issue of postindictment delay in the case at bench, we find it necessary to discuss the matter for purposes of our analysis.

1. In precomplaint delay, the defendant must prove actual prejudice (prejudice *is not* presumed) and, under due process, the trial court balances the justification for the delay against the prejudice to the defendant.

2. In prearrest extended delay, prejudice *is* presumed and, under speedy trial right, the trial court balances the justification for the delay against the presumed prejudice to the defendant.

3. In postindictment delay, prejudice *is* presumed and, under speedy trial right, there must be good cause for the delay otherwise the defendant has been denied his right to a speedy trial. There is no "balancing" of justification for the delay against the presumed prejudice.

In support of his view, appellant cites *Jones* v. *Superior Court, supra,* 3 Cal.3d 734; *People* v. *Mitchell* (1972) 8 Cal.3d 164 [104 Cal.Rptr. 348, 501 P.2d 916]; *People* v. *Williams* (1973) 30 Cal.App.3d 502 [106 Cal.Rptr. 324]; *Rice* v. *Superior Court* (1975) 49 Cal.App.3d 200 [122 Cal.Rptr. 389].)

In *Mitchell,* the trial court found that the prejudice to the defendant by prearrest delay outweighed whatever justification there was for the delay and dismissed the charges. The Supreme Court affirmed, saying that the issue was a factual one and that there was substantial evidence to support the trial court's ruling. (*People* v. *Mitchell, supra,* at p. 167.) But whether the prejudice was presumed from the 13-month delay, or whether there was evidence of actual prejudice, cannot be determined from the Supreme Court decision. Interestingly enough, the court cited two cases in support of its holding—*Jones, supra,* which we shall discuss in further detail below, and *People* v. *Wright* (1969) 2 Cal.App.3d 732 [82 Cal.Rptr. 859]. *Jones* was a prearrest case, but *Wright* was a precomplaint case (five-month delay) where the trial court dismissed and the Court of Appeal reversed because the defendant made no attempt to show that he had been prejudiced.

*Jones* does appear to support appellant's contention. In *Jones,* there was a 19-month prearrest delay. Speaking to the issue of prejudice, the court said, "Petitioner [defendant] was clearly prejudiced. The most obvious prejudicial effect of the long pre-arrest delay was to seriously impair his ability to recall and to secure evidence of his activities at the time of the events in question." (*Jones* v. *Superior Court, supra,* 3 Cal.3d at p. 740.) While the court did not state that it was "presuming"

prejudice, it seems to have done just that for, as the dissent points out, there was no evidence of such impairment. (*Id.,* at p. 742.)

In *People* v. *Williams, supra,* 30 Cal.App.3d 502, there was an 18-month prearrest delay.[6] The Court of Appeal, following Jones, presumed "some prejudice" to the defendant but found that the justification for the delay outweighed the presumed prejudice.

In *Rice* v. *Superior Court, supra,* 49 Cal.App.3d 200, it appears that the defendant, by reason of the negligence of the state, was not arrested until 11 months after his *indictment.* The People argued that, assuming that the state had been negligent, the defendant had to show actual prejudice. The Court of Appeal cited and quoted (*id.,* at p. 206) from *Jones* in rejecting the People's argument. We suggest that the decision was correct but not because of *Jones* which was, to repeat, a prearrest delay case but rather because of *Sykes* and *Harris, supra,* which were postindictment cases.

But *Jones* and *Williams* do hold that prejudice is presumed when there has been extended prearrest delay.

*Scherling* v. *Superior Court, supra,* 22 Cal.3d 493, however, casts considerable doubt as to whether *Jones* is still good law on the issue of presumed prejudice.[7] *Scherling* involved a precomplaint delay of some 9-10 years. There was a motion to dismiss for denial of a speedy trial. At the hearing on the motion, Scherling testified that his memory of the times at issue had faded, and certain of his witnesses had died or were unavailable. The trial court found that Scherling had not been prejudiced by the delay. The Supreme Court agreed. As a consequence, the court saw no need to determine whether the delay was justified for there was no prejudice to balance against the reasons for the delay. (*Id.,* at pp. 506-507.)

*Scherling,* of course, was a precomplaint delay and the court's analysis was in terms of fair trial—due process. However, the court in its reasoning explicated the law in the continuum of delay from the precomplaint to the postindictment stages as follows: "Unlike federal law, however, this state has extended the right [to speedy trial] to the preindictment and prearrest stage, holding that it attaches under article I,

---

[6]In *Williams,* what we have defined as "prearrest" delay is referred to as "'post indictment-prearrest'" delay. (At p. 505.)

[7]We are aware, of course, that *Scherling* cites and relies on *Jones* but it does so only in the context of the "balancing process" to be used in precomplaint or prearrest situations.

section 15 of our Constitution after a complaint has been filed. [Citations.] But the consequence of a violation depends upon the stage at which a violation of the right occurs. The right to a speedy trial following the filing of an indictment or information and the time limitations applicable thereto are set forth by statute (§ 1382) and a violation of the statute is presumed to be prejudicial. [Citation.] A violation at a prior stage depends upon a balancing of the prejudicial effect of the delay and the justification therefor. [Citations.]8" (Fns. 6 and 7 omitted.) Footnote 8 provides: "We reject defendant's suggestion that we hold a presumption of prejudice arises whenever there is a delay between the commission of a crime and the time a formal charge is filed. Even after a complaint is filed prejudice is not presumed from a delay. To extend the presumption to an even earlier stage would be clearly unwarranted. In *Archerd*, we rejected such a proposal: 'Post-indictment delay does not require the showing of prejudice; it is presumed. Such a rule would be unworkable if prejudice were presumed in preindictment delay.' (3 Cal.3d at p. 640.)" (*Id.*, at p. 504.)

And, again, the court returned to this theme: "We affirm our determination in *Archerd*, that due process is the appropriate test to be applied to a delay occurring after a crime is committed but before a formal complaint is filed or the defendant is arrested. But regardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial *not defined by statute*, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (Italics added.) (Fn. omitted.) (*Id.*, at p. 505.)

■ It appears to us from the reasoning in *Scherling* that the Supreme Court has developed a two-tier test of delay:

1. Where speedy trial is defined by statute as in Penal Code section 1382, a delay beyond the statutory period gives rise to a presumption of prejudice and prosecution is barred unless the state can show good cause for the delay.

2. Where a defendant claims he has been denied due process of law or his right to a speedy trial not defined by statute,8 the defendant must

---

8For illustrations of specific time provisions implementing the right to an expeditious trial enacted by the Legislature, see *Jones* v. *Superior Court, supra,* 3 Cal.3d at p. 738.)

show actual prejudice which prejudice, must then be balanced against such justification for the delay as may exist, in order to resolve defendant's claim.

We believe our view is supported by the high court's reasoning in the postindictment cases. A delay of more than 60 days in the postindictment case (180 days past the 60 days in *Sykes, supra*), as a matter of human experience, should not be more prejudicial to a defendant than the lapse of 9-10 years in the precomplaint stage. (*Scherling, supra.*) But in *Sykes* prejudice was presumed whereas in *Scherling* it was not. The difference is not in experiential terms, it is as *Sykes* and *Harris, supra,* make clear, because the Legislature has set a time limit within which the state must act. Thus, if action is delayed beyond that time limit, presumptively, the defendant has been denied his constitutional right. (*Sykes* v. *Superior Court, supra,* 9 Cal.3d at p. 89; *Harris* v. *Superior Court, supra,* 209 Cal. at p. 61.) Absent such statutory limits, there is no basis for such a presumption.

We point out, too, the anomalous situation that arises if we compare *People* v. *Hannon, supra,* 19 Cal.3d 588 and *Jones* v. *Superior Court, supra,* 3 Cal.3d 734. Both cases involved prearrest delay. In *Jones,* it was 19 months; in *Hannon,* 7 months. In *Jones,* there was no evidence of actual prejudice, it was presumed. In *Hannon,* the defendant testified as to prejudice and was cross-examined. As a result of his testimony, it developed that the seven-month delay (surely an "extended delay") had not prejudiced Hannon as much as Hannon thought it had and the justification for the delay outweighed "whatever prejudice accrued to defendant as a result of the seven-month delay." (*People* v. *Hannon, supra,* 19 Cal.3d at p. 610.) If prejudice is to be presumed, Hannon would have been better advised to do as Jones had done, i.e., not testify. It does not appear to us that the interests of justice are served by such a result.

Finally, as there is to be a "balancing process" between the justification for the delay and the prejudice to the defendant, how does a court "balance" when it does not know the extent of the prejudice, as the court does not, when prejudice is presumed? In the "balancing process," presumably, the greater the prejudice, the more compelling the justification for the delay must be if the case is not to be dismissed; conversely, if the prejudice is slight, then the justification for the delay need not be so persuasive. We point out again that in the postindictment phase where

prejudice is presumed, there is no balancing process; the state must show "good cause" for the delay.

We are not alone in our view. Very recently Division One of this court came to the same conclusion in *People* v. *Jackson* (1979) 95 Cal.App.3d 397 [157 Cal.Rptr. 154].)[9]

■ It follows from our reasoning that appellant was denied neither due process (the precomplaint delay) nor a speedy trial (the prearrest delay) for in neither context has he shown prejudice and prejudice is not presumed. We need not examine, therefore, the justification, if any, for the delay.

C. *Actual Prejudice.* One further matter remains to be disposed of. ■ Appellant asserts that he suffered actual prejudice because he never had an opportunity to cross-examine the bank teller who identified him in a photo lineup. Appellant's convoluted reasoning goes like this:

Because of the delay, the bank teller who identified appellant in a photo-up, a Ms. Brondich, was unavailable for trial. She was conditionally examined under Penal Code section 1335. *If* appellant had gone to trial, appellant would have been deprived of the opportunity of cross-examining Ms. Brondich to see whether she could identify him in person rather than by picture.

Appellant never asserted the proposition before the trial court. Assuming he can assert it here for the first time, it is completely without merit for several reasons, some of which we shall enumerate:

1. Appellant waived jury trial and submitted the matter on the transcript of the preliminary examination. The conditional examination of Ms. Brondich was neither received or even offered in evidence at the preliminary examination. Thus, she never was a witness against him. To say what would have happened in the event appellant had chosen a full-blown trial is to engage in idle speculation.

2. If appellant had wanted to cross-examine Ms. Brondich, he could have done so at the conditional examination. (Pen. Code, § 1340.) He chose not to appear there either in person or by counsel.

---

[9]We must confess that the *Jackson* court arrived at its result in considerably fewer words than we.

3. If appellant desired to have Ms. Brondich present at the time of trial, he could have subpoenaed her. The record demonstrates that he had ample time and notice to do so.

There is no need to elaborate further. There was no actual prejudice.

The judgment is affirmed.

Scott, Acting P. J., and Halvonik, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 18, 1979. Mosk, J., was of the opinion that the petition should be granted.