STATE of Missouri, Respondent,

v.

William H. CARLOS, Appellant.

No. 59420.

Supreme Court of Missouri,
en banc.

March 14, 1977.

Rehearing Denied April 11, 1977.

Robert G. Duncan, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, James W. Humphrey, Jr., Kansas City, for respondent.

BARDGETT, Judge.

This case is written on reassignment. Appellant William H. Carlos was convicted of murder in the first degree under section 559.010, RSMo 1969, in the circuit court of Jackson County and his punishment was assessed at life imprisonment. Following rendition of judgment and imposition of sentence, an appeal was perfected to the Missouri Court of Appeals, Kansas City district. In that court the conviction was reversed and the cause was remanded but the cause was then transferred to this court by this court under Art. V, sec. 10, Mo.Const.,[1] and we will determine the cause as on original appeal.

On September 17, 1973, Dr. Lynn Weller was killed at his home by one Patrick McGuire. According to evidence presented by the state, and particularly through the testimony of McGuire and one Robert North, appellant hired McGuire to kill Weller.

Appellant first asserts that "the trial court erred in denying defendant's motion for mistrial and or continuance when State's witness McGuire refused to identify his alleged accomplice in that said identity was crucial and essential to the defense and was required for a fair and impartial trial and said refusal denied the defendant's right to confront and cross examine the witnesses against him as guaranteed by Article I, Section 18(a) of the Missouri Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."

Patrick McGuire, called by the prosecution, testified on direct examination that appellant hired him to kill Dr. Lynn Weller and that on the evening of September 17, 1973, he shot Dr. Weller in the house of Dr. Weller. On direct examination, McGuire testified that "somebody" went with him to Dr. Weller's house but refused to identify the person. On cross-examination, McGuire testified again that a man went with him to the Weller house and that the man "waited . . . in the area outside the house." After further cross-examination of McGuire in which he admitted that he entered into a plea bargain with the state and was sentenced to twenty-five years on a reduced charge of second-degree murder, the following transpired:

"Q Right. Now, another part of the bargain, was it not, was that you were not going to have to tell who was involved in this offense with you, the other man that was out there at the premises?

A I think, that was part of it, yes.

. . . . .

Q Now, who was the other trigger man? Who was the other man out there?

A I would rather not answer.

Q Well, I would rather you would. Answer the question. Who was out there?

A (No response.)

Q Are you refusing to say?

A I would rather not answer.

. . . . .

Q (By Mr. Duncan) You have refused to answer the question of who it was. I would ask this question: Where is that man at now?

A I don't know.

Q How did you contact him prior to the incident, the killing of Dr. Weller?

1. Subsequently, the Missouri Court of Appeals, Kansas City district, ordered transfer to this court, after opinion, *State v. Brown,* 549 S.W.2d 336 decided concurrently herewith, which also involves questions relating to the refusal of a witness to answer questions on cross-examination.

A I would rather not answer that.

Q Are you refusing to answer that?

A I am.

Q Did you pay him any portion of the money?

A No.

Q Has he been arrested?

A I don't know.

Q Did he ever have any contact with Dr. Carlos?

A No.

MR. DUNCAN: I would make the same request, your Honor, as to how he contacted whoever this man was, and. ask that the Court order him to testify.

(Counsel approached the bench and the following proceedings were had:)

THE COURT: Do you want a recess now?

MR. HUMPHREY: Whatever you want to do.

(The proceedings returned to open court.)

THE COURT: Gentlemen of the jury, we will have a recess for twenty minutes.

RECESS

THE COURT: Mr. Duncan, would you repeat the questions to the witness?

Q (By Mr. Duncan) Mr. McGuire, I would ask you now, who was the other man that was present, hiding in the bushes, on the night of September 17th, 1973 at 7320 Manchester, the home of—or whatever the address is, and I believe that's correct—the home of Dr. Weller, on the evening and there at the time that you killed Dr. Weller? What was that man's name?

A I would rather not answer.

Q The second question: How did you get in contact with that man, whoever he was, regarding being with you on the killing?

A I would rather not answer that.

MR. DUNCAN: I would now, your Honor, ask that the Court direct Mr. McGuire to answer those questions and

if he refuses, to hold him in contempt under Section 491.200 of the Missouri Statutes, by which he would be confined until he purges himself of contempt, and ask for a continuance pending him purging himself of contempt, or, in the alternative, granting a mistrial.

THE COURT: Mr. McGuire, the Court directs you to answer the questions asked. If you refuse to do so you are in contempt of this Court. Do you refuse to answer?

THE WITNESS: I do.

MR. DUNCAN: I would then, you Honor, ask for the relief I have previously mentioned.

THE COURT: All right. Mr. McGuire, the Court holds you in contempt of this Court for the refusal to answer the questions, and will commit you to the custody of the Jackson County Jail until such time as you purge yourself of your contempt. In this sense and for this purpose, you are your own jailer.

Since the Defendant is already in the custody of the Jackson County Jail, we may continue."

A discussion was then had between the trial judge and counsel, the motions for continuance and mistrial were denied, and the parties proceeded with the trial.

 The granting of a continuance or the declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court and an appellate court will disturb the action of the trial court only where we find a clear abuse of discretion. *State v. Cuckovich*, 485 S.W.2d 16, 21–22, 23–24 (Mo. banc 1972). No one could tell when, if ever, McGuire might decide to answer the questions. Either action by the trial court would have aborted the trial. Neither action was justified nor practical under the circumstances. We find no abuse of discretion in this case.

Appellant contends in this court that "the trial court committed prejudicial plain error by failing to strike the testimony of State's

witness McGuire after McGuire refused on cross examination to reveal the identity of his alleged accomplice to the murder for which appellant was charged."

■ When McGuire refused to identify the man who had accompanied him to the Weller residence at the time Dr. Weller was killed, defendant, in addition to asking that McGuire be punished for contempt, sought a mistrial or, in the alternative, a continuance until McGuire purged himself of contempt on the basis that his right of confrontation had been denied. The trial court held McGuire in contempt but denied a mistrial or a continuance. Defendant did not then or at any other time thereafter ask that all or any part of McGuire's testimony be stricken. In his motion for new trial, defendant raised no issue about being entitled to have McGuire's evidence stricken and made no complaint that the court should have stricken it on the court's own initiative. When this appeal was briefed for the court of appeals, no such contention was asserted by appellant and no reference to the plain-error rule was made. Clearly, the issue was not preserved.

In its opinion the court of appeals raised sua sponte the question of whether failure of the trial court to strike McGuire's testimony on its own initiative was plain error and held that it was. Of course, after the case was transferred here, defendant, prompted by the opinion of the court of appeals, now for the first time seeks relief on that basis.

■ Has there been such a miscarriage of justice, required by Rule 27.20(c), that we should convict the trial court of error in not acting on its own initiative to strike all or part of the testimony of McGuire?

In the first place, McGuire did not decline to testify as to whether his companion had had any dealings with defendant Carlos. After testifying on direct examination with reference to the contract made with him by defendant for the murder of Dr. Weller, McGuire was asked on cross-examination whether his companion had any dealings with defendant. He answered that he had

not. Defendant did not ask any other questions on this subject. Hence, it is clear that defendant was not denied the right of cross-examination as to the murder contract. Clearly, he would not have been entitled to have the testimony of McGuire concerning the murder arrangements stricken even if he had asked therefor. He was not denied his right of confrontation and cross-examination thereon.

The other phase of McGuire's testimony pertained to the actual murder of Dr. Weller on the night of September 17, 1973. He testified that a companion accompanied him but denied that his companion had entered the Weller house or that he and his companion had gone to the house for the purpose of robbery. McGuire's testimony was in conflict with that of Mary Graves who testified that the other man had entered the house with McGuire. McGuire was cross-examined extensively by counsel for defendant and answered all questions regarding these matters except those which sought the name of his companion and how he had contacted him.

It is defendant's theory that, if he had been furnished the name of McGuire's companion, he might have been able to impeach McGuire's testimony by showing that robbery was their motive and possibly that McGuire was not even present and did not kill Dr. Weller.

At and prior to the time this case was tried, the state suspected that one George Peters was the companion of defendant and it had procured a warrant for his arrest in connection with the Dr. Weller matter. Despite a nationwide search, it had been unable to find him at that time. The transcript disclosed that counsel for defendant had been allowed to examine the state's file and knew about George Peters. At the time McGuire refused to name his companion, the prosecuting attorney stated to defendant's counsel that it suspected McGuire would name Peters if he answered the question. Counsel acknowledged that he already knew this from looking at the state's file. Peters had been charged as a participant with McGuire in this murder and de-

fense counsel knew it. He also knew or strongly suspected that if McGuire answered the question, he would name Peters. So, if the question was asked to discover the name of the "other person", it made little difference whether the question was answered or not because defense counsel already had that information and could have used it in cross-examining the witness.

In the context of this case, the primary issue for the jury was whether the defendant knowingly and intentionally aided or encouraged McGuire in the killing of Dr. Weller. Dr. Weller died as a result of a shotgun wound in the head. All of the evidence supports the finding that McQuire shot Dr. Weller in the head with a shotgun. As noted supra, the testimony of Mary Graves who was present at the murder conflicts with McGuire's account in that Graves said the "other man" accompanied McGuire into Weller's house and shot and wounded him first with a handgun. McGuire was fully cross-examined on all of the events that transpired at Weller's house and answered all questions except to identify his companion or say how he (McGuire) contacted him prior to the murder.

The evidence of defendant's guilt was strong. The likelihood that, if McGuire had told who his accomplice was, defendant could have located him and secured from him testimony in that trial which would have shown that McGuire was not present when Weller was killed, or that robbery was their motive, is minimal at best. According to the evidence, nothing was taken except some change observed and taken by McGuire. Dr. Weller's wallet was not taken and the house was not ransacked. There was no evidence to support a theory of robbery as the motive. On the other hand, there was evidence that the killing was pursuant to a murder contract with defendant. There was positive evidence by North and McGuire as to the arrangements made by defendant for Dr. Weller to be murdered; there was testimony by Mary Graves that she recognized McGuire at the Weller home when the doctor was killed; and there was testimony that subsequently McGuire reported to defendant about the killing in North's presence and that at that time defendant handed McGuire an envelope which North understood contained a payment.

Although the defense knew Peters was believed to be McGuire's companion at the murder, there is no evidence as to what efforts, if any, were made by the defense to locate and subpoena Peters.

In *State v. Brown, supra* note 1, this court adopted the method of determining whether or not to strike testimony as set forth in *United States v. Cardillo,* 316 F.2d 606 (2d Cir. 1963), cert. den., 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963). *Brown* involved a situation where testimony of a nonparty defense alibi witness was stricken because the witness refused to answer questions as to the identity of the third of three robbers. The constitutional right of a defendant to call witnesses in his defense and the right to cross-examine his accusers was fully discussed. In *Brown* the conviction was reversed and the cause remanded because the trial court abused its discretion in striking the testimony of the alibi witness as infringing upon the defendant's constitutional right to call witnesses in his defense. The particular circumstances in *Brown* demanded that result under the rule of *Cardillo.*

In the instant case, the defense never requested that any testimony of McGuire be stricken. The court has carefully considered all aspects of this case under the *Cardillo* rule and concludes that the failure of the trial court to, sua sponte, strike all or part of McGuire's testimony did not unduly curtail the defendant's right to cross-examine or prejudice the defendant in the trial of this case much less result in a manifest injustice or miscarriage of justice under Rule 27.20(c). The point is overruled.

■ Defendant next asserts "the trial court erred in refusing to give defendant's instructions A and B pertaining to the weight to be given the testimony of an accomplice and an informer and the failure of the trial court to give said instruction was illegal, improper, and an abuse of its

discretion, and in violation of Missouri Supreme Court Rule 26.02(6), and denied the defendant his constitutional right to due process of law."

In *State v. Lang*, 515 S.W.2d 507, 510–511 (Mo.1974), this court disposed of a similar contention as follows:

"Missouri Approved Criminal Instruction (MAI–CR) 2.01 is now the required instruction on the weight and value of the evidence and the believability of witnesses. Note 2 following that instruction provides, with an exception not applicable here: ' * * * no other or additional instruction may be given on the believability of witnesses, or the effect, weight or value of their testimony. Without limiting the foregoing, no instruction may be given to the effect that the jury may convict on the uncorroborated testimony alone of any one witness or class of witnesses, or that the testimony of any one witness or class of witnesses, when uncorroborated, must be received with great caution or must be weighed any differently than that of other witnesses.' In view of this mandate the Court could not, upon a retrial, give any instruction concerning the weight and value of the testimony of an accomplice, even if a correct one were offered. For this reason alone, if there were no others, the case should not be reversed for the failure to so instruct."

Defendant's final point relates to the action of the trial court in allowing the prosecuting attorney to cross-examine one of the state's witnesses. Mary Eggleston testified for the state concerning a telephone conversation she had with defendant in which she stated the defendant was very angry with Weller and threatened to kill him. On direct examination she said nothing about any further conversation with the defendant concerning that incident. On cross-examination she testified that, after the conversation related in her direct testimony, defendant phoned her back and stated he did not really mean that he wanted to kill Weller and he was just angry and upset when he made that statement. On re-direct the prosecutor was allowed to ask the witness about a statement she had given to the police in which she related the conversation concerning the killing of Weller but made no mention of a subsequent call recanting that intent. The prosecutor claimed surprise by the testimony of this witness given on cross-examination and was permitted to cross-examine the witness concerning her testimony about the second call from the defendant.

■ The defendant contends the court improperly allowed the prosecutor to refer to the statement given to the police and to subsequently cross-examine the witness. In *State v. Rack*, 318 S.W.2d 211 (Mo.1958), the court stated at 217: "A trial court may, within its discretion, permit cross-examination of a party's own witness where there is a basis of surprise and where the witness is evidently friendly to the other side and has made statements contrary to his testimony at the trial. A trial court may exercise its discretion in such circumstances."

In the situation here presented, it is evident the state was surprised by the witness's statement on cross-examination that defendant called back and explained his previous statement concerning the killing of Weller. It further appears the witness was friendly to the defendant and had omitted this information from her previous statement. She also had failed to make this information known to the assistant prosecutor when he interviewed her. For these reasons the court did not abuse its discretion in permitting the state to cross-examine this witness.

The judgment is affirmed.

SEILER, C. J., FINCH, J., and HOUSER, Special Judge, concur.

HENLEY, J., concurs in result.

DONNELLY, J., concurs in result in separate opinion filed.

MORGAN, J., not sitting.

RENDLEN, J., not participating because not a member of the court when cause submitted.

DONNELLY, Judge, concurring in result.

In *State v. Brown*, 549 S.W.2d 336 (Mo. banc 1977), decided concurrently herewith, I protested the adoption of the *Cardillo* rule. I would not apply it in this case primarily because it violates the dictates of *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).

I concur in the result reached in this case only because I can find no manifest injustice or miscarriage of justice under Rule 27.20(c). See *United States v. Qualls*, 500 F.2d 1238 (8 Cir. 1974).