**STATE of Missouri, Respondent,**

v.

**Irvin M. BROWN, Appellant.**

**No. 59510.**

Supreme Court of Missouri, en banc.

March 14, 1977.

Lee M. Nation, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

This case is written on reassignment. Appellant Irvin Brown was found guilty by a jury on two counts of robbery in the first degree with the punishment assessed at five years' imprisonment on each count. The court entered judgment in accordance with the verdict and, exercising its discretion, determined that the sentences of five years on each count would run consecutively. Brown appealed to the Missouri court of appeals, Kansas City district, where the convictions were affirmed. The court of appeals thereafter overruled Brown's motion for rehearing but sustained his motion for transfer to this court because of the general interest and importance of the questions presented in the case involving the trial court's action in striking the entire testimony of a nonparty defense alibi witness because the witness refused to answer a certain question on cross-examination by the state.[1] This court may determine the cause as on original appeal and will do so in this case. Art. V, sec. 10, Mo.Const., as amended.

Appellant's first point is that the evidence was insufficient to support the convictions.

We have reviewed the evidence and conclude, as did the court of appeals, that the evidence is sufficient to support the convictions. The evidence will not be set forth in detail as the court has concluded the convictions must be reversed and the causes remanded for new trial because of error in striking the entire testimony of defense witness James Moore, Jr., which is the subject of the second point on this appeal.

Max Levine, the proprietor of a grocery store, and his son Sam Levine, one other employee, and a customer were in the store when three men entered the store, two of whom had guns, and robbed the Levines. The specific location of the third robber, at this time, is not disclosed by the evidence. Max Levine set off an alarm which was received by two officers in a nearby patrol car. The officers met a green Cadillac going in the opposite direction. There were three black males in the Cadillac, two in the front seat and one in the rear seat. The occupant in the rear seat had a brown ski mask pulled down approximately to the top of his eyes. The police pursued the accelerating Cadillac which subsequently stopped.

---

1. The additional reason given by the court of appeals in its order transferring this case is that this court had previously ordered transfer of *State v. Carlos*, 549 S.W.2d 330 (Mo.banc 1977), decided concurrently herewith.

The police were only about 50 feet behind it at that time and came to a halt immediately behind the Cadillac. One officer went to the Cadillac and arrested two of the men—one in the front seat and one in the rear seat. The third occupant had run away from the Cadillac and was pursued by the other officer. He lost sight of the fleeing man momentarily on two occasions but did arrest the defendant Brown as Brown was on the front porch of a house hollering to be let in.

The court of appeals held, and we agree, that the foregoing and other evidence was sufficient to permit the jury to find the defendant Brown was the man who ran from the Cadillac and who previously had participated in the robbery. In so saying, however, it must be borne in mind that the jury was not compelled to so find. It had the right and power to find for the defendant.

The defendant pled not guilty and as his only witness called one James Moore whose testimony is set forth below.[2] Moore testified he and John Green were two of the three robbers and that John Green was the man who ran from the Cadillac. Previously

2. "*DIRECT EXAMINATION BY MR. BROWN* [defendant's attorney]:
Q. Would you state your name, please?
A. James Moore, Jr.
Q. Mr. Moore, did you have occasion to be charged by the State of Missouri by Indictment with two counts of robbery, in relation to an incident which occurred at the Sunshine Super Market, on 39th and Brooklyn, on October 12, 1974?
A. Yes, I did.
Q. Now Mr. Moore, calling your attention to October 12 at the Sunshine Super Market incident, would you state to the Court and the jury whether the defendant Irvin Michael Brown accompanied you to 39th and Garfield on that day?
A. No, he didn't.
Q. And did he participate in the incident?
A. No, sir.
Q. Now we have heard testimony here that you were apprehended in regard to this incident, in a white over green Cadillac, by I believe it was Officer Florea. Now was Irvin Michael Brown in that Cadillac with you on that day?
A. No, sir.
Q. Now can you tell the Court and the jury who the person was driving that Cadillac?
A. Is it necessary that I have to tell?
Q. Well, I would appreciate it if you would answer that, yes.
A. He is now deceased, though John Green.
Q. And is he a person who ran from the Cadillac on that day in question?
A. Yes, sir.
MR. BROWN: You may inquire.
CROSS–EXAMINATION BY MR. HAGGERTY:
Q. What time did this robbery take place?
A. I really don't know. I know it was, might have been about 10:00 o'clock or so.
Q. All right. Now how many people committed this robbery?
A. Three people.
Q. All right. It was yourself and you now say this deceased man, John Green. Who was the third party?

A. Do I have to say that, also?
Q. I believe you do.
A. I mean like, I mean, even though if the party, you know, I don't really want to say who *the third party was.*
MR. HAGGERTY: Your Honor, I would ask the Court to instruct the witness to answer the question.
THE COURT: The witness will not answer the question. You will answer the question.
A. Your Honor, do I have—do I have the opportunity to call my lawyer?
THE COURT: The defendant has called you as a witness here in his behalf. If you want to say something to help him, this is the opportunity to do so. If you don't, why we will excuse you, and send you on your way.
A. Your Honor, I would like to be excused, and go back to Jackson County Jail.
THE COURT: If you would like to interrogate him further.
MR. HAGGERTY: Well, the witness should be excused. I would ask that his testimony be excluded altogether, Your Honor; and the direct examination, and I be allowed to go ahead and continue his examination, and ask the Court to.
THE COURT: On your motion, I will strike the whole of his testimony.
MR. HAGGERTY: I would ask the Court to strike his testimony, if I am not permitted, if he is not going to answer the questions as to who the third party was, I would ask that his testimony be striken.
MR. BROWN: I would like to make further inquiry of the witness at this point.
THE COURT: Do so. If you can change his mind, fine. If you can't—
Q. (By Mr. Brown) Now Mr. Moore, is the reason that you don't want to name the third party; is that reason because you are afraid?
A. Yes, sir; in a way, because I have a family that I love, and if it was implicated that I turned State's evidence on the party that

officer Florea testified he arrested the two men who remained in the car and they were James Moore (the witness) and a person named Bates. Moore testified the defendant Irvin Brown did not accompany him to the grocery store, did not participate in the robbery, and was not in the Cadillac with Moore on the day in question.

At this point it is to be observed that there is no question under the evidence but what three men participated in the robbery; that two of the men were arrested in the Cadillac and they were James Moore and Bates. According to the state's evidence, the man who ran from the Cadillac was the defendant Irvin M. Brown. According to the testimony of defense witness Moore, the man who ran from the Cadillac was one John Green and not the defendant. Officer Halteman testified it was the Cadillac's driver who ran from the car when it stopped. The factual issue for the jury to decide was whether defendant Brown was the man who ran from the car and under all the evidence was the man who ran from the car the third participant in the robbery.

Moore did not refuse to testify as to who was driving the Cadillac or who ran from it.

was alive, that I would have to fear for the life of my family.

Q. Now you pled guilty to the charges of robbery; haven't you, you entered a guilty plea, did you not?

A. Yes, sir.

Q. Now which, as far as you are concerned, means you will probably be going to the penitentiary?

A. Possibly.

Q. And you also recognize this possibility that the third party may be going to the same penitentiary, do you not?

A. I couldn't say that.

Q. Are you afraid for your own life?

A. No more than for my own life, but the life of the people I love out there on the street.

MR. BROWN: Judge, may we approach the bench? (Counsel approached the bench and the following proceedings were had:)

MR. BROWN: I think we can take this off the record, if you like.

THE COURT: No, I want every word of it on the record.

MR. BROWN: I understand that the man will testify to who the third party was, if it can be done not in the presence of all these people.

THE COURT: No, it is important that it be done right here, before God Almighty, and these twelve men.

MR. BROWN: Judge, I would think that you should take into consideration, as a practical matter, the fear that the man has for his life, for—

THE COURT: He comes here testifying not as a witness for the State, but for the defendant. No, I have no intention of going on to test his testimony, if he doesn't want to give his complete testimony, we can't test his credibility, we can't test his story, unless he wants to tell us these things.

(The proceedings returned to open Court.)

THE COURT: Gentlemen of the jury, the Motion to strike the testimony of this witness is stricken, and the jury instructed to disregard each and every part of his testimony.

He is now excused.

MR. BROWN: Judge, I have one further question.

THE COURT: No, you are through. Go on your way.

MR. BROWN: Judge—

THE COURT: I told you, you are through. Go on your way. There has to come a final time somewhere on these things. You just don't go on forever.

MR. BROWN: Judge, I am going to object to the striking of the testimony of this witness. I believe it is improper in this case. And I understand that the man is afraid, and I think that the Court can understand that, too, that a man would be afraid for the life of his family and children, that the man jeopardized his own freedom by coming here to testify today. He doesn't gain anything by way of coming here and testify today. In fact, it would probably mean that he end up with a longer sentence. And I—I totally object to that.

MR. HAGGERTY: I would strongly resent and object to any inference that the State was in any way out to penalize this man. All the State wants to find, if the man wants to testify, to testify, not to come and give half a loaf and walk away.

MR. BROWN: The man told me that much if he come in here and testify, that the chances are that he is going to end up with much more time, that he would be looking at without testifying. He agreed to come here and testify. And I don't think we should make a man jeopardize his life in this. I just don't see it.

THE COURT: The Court has ruled. There is nothing further to rule on."

He testified one John Green was the driver and that John Green ran from that car.

On cross-examination by the state, Moore was asked:

"Q. All right. It was yourself and you now say this deceased man, John Green. Who was the third party?

A. Do I have to say that, also?

Q. I believe you do.

A. I mean like, I mean, even though if the party, you know, I don't really want to say who the third party was.

MR. HAGGERTY: Your Honor, I would ask the Court to instruct the witness to answer the question.

THE COURT: The witness will answer the question. You will answer the question.

A. Your Honor, do I have—do I have the opportunity to call my lawyer?"

The state does not contend that the defendant was one of the two arrested in the Cadillac but rather that the defendant was the one who ran from the car. Who then is it that is referred to in the question supra as the "third party"? It is Bates, the other man, who was arrested with Moore in the car. We know the question does not refer to the defendant because the witness had already testified concerning him. And it was not John Green because the witness testified that Green was the man who ran from the car. Finally, the state already knew the identity of this "third party" as one Bates, the man arrested with Moore in the car.

Nevertheless, the question which called upon Moore to name the men who were with him in the car was certainly material and relevant and should have been answered by the witness. The court of appeals said, and we agree, "They [state] were entitled to ask the admitted participant [Moore] who the third person was to test his [Moore's] credibility. The testimony was, on its face, a patent attempt to avoid testifying as to the guilt of the other occupant of the vehicle who had apparently not pled to the charges, but who was, of course, apprehended at the scene by the officers."

On motion by the state, the trial court struck the entire testimony of witness Moore because he refused to identify the man who was arrested in the car with him. In so doing the witness's testimony that the appellant had not participated in the robbery was removed from the jury's consideration.

The appellant asserts that striking witness Moore's testimony "denied the defendant fundamental fairness which is the essence of due process and a violation of the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States, when the court granted the prosecutor's motion to strike all of the testimony of the witness called for the defense."

In *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the United States Supreme Court said: "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

Art. I, sec. 18 (a), Mo.Const., provides: "That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; . . . to have process to compel the attendance of witnesses in his behalf; . . . ."

A witness may be penalized for refusing to answer material and relevant questions under sec. 491.200, RSMo 1969, which provides: "A person summoned as a witness, and attending, who shall refuse to give evidence which may lawfully be required to be given by such person, on oath or affirmation, may be committed to prison by the court, or other person authorized to take his deposition or testimony, there to remain, without bail, until he gives such evidence."

The trial court did not use its contempt powers under sec. 491.200 as to witness Moore. It is argued that when the witness is already in jail or the penitentiary under sentence or, as here, awaiting sentence on his guilty plea to robbery, the ordinary coercive sanction of imprisonment for contempt is simply not effective. Therefore, it is argued, the trial court must and does have the power to impose other sanctions so as to meet a situation where a witness who is already confined refuses to answer a material and relevant question. In this case the threat of jail for contempt is insignificant and provides no practical coercive effect. Even as to a witness who is not in custody at the time he testifies, the threat of jail for contempt will not always be effective. He may choose jail in preference to obeying the court's order to answer a question but, at least as to that type of witness, it is reasonably probable that the threat of jail will be sufficient to cause him to answer the question. In the final analysis, however, if a person refuses to speak, no power available to any court can make him do so.

Text writers have stated general rules to govern situations where a witness refuses to answer proper questions.

In 5 *Wigmore on Evidence,* sec. 1391, at 137 (Chadbourne Rev. 1974), the general applicable rule is stated as follows: "Where the witness, after his examination in chief on the stand, has *refused* to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed, and his direct testimony should be struck out. On the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result."

In *McCormick on Evidence,* sec. 19, at 45, appears the following: "It is submitted that except for the testimony of the state's witnesses in criminal cases the judge should let the direct testimony stand but should be required on request to instruct the jury in weighing its value to consider the lack of opportunity to cross-examine."

And at 98 C.J.S. Witnesses § 374, at 127, it is stated: "Where a witness refuses to submit to cross-examination, the action of the trial court must be governed by its conclusion on which of several alternatives justice to all concerned will be obtained, and generally where a witness refuses to answer, or answers evasively, pertinent questions on cross-examination, his testimony on his direct examination should be stricken, especially where the witness is a party testifying in his own behalf. The fact that a party refuses to answer pertinent and proper questions on cross-examination may be considered by the jury in testing his good faith and credibility. Where plaintiff on cross-examination before a referee refuses to answer proper and pertinent questions, he should be compelled by the judge, on proper request, to make full and complete answer."

The contempt sanction is coercive upon the witness himself but the sanction of striking all of the witness's testimony may or may not be coercive with respect to the witness. If the witness is a party, then the threat of striking his testimony is coercive, but if the witness is not a party such a threat is not coercive as to the witness at all. The instant case is an example of the latter proposition. Striking the entire testimony of the witness Moore was no sanction as to Moore. That sanction operated to the detriment of the defendant in a situation where the defendant had no way open to him to cause the witness to answer the question. Yet, the defendant was totally deprived of the witness's exculpatory testimony.

Depriving a defendant of the benefit of testimony given by a defense witness in a criminal case takes on additional significance because the state and federal constitutions vest a constitutional right in the *defendant* to confront his accusers, to cross-examine them, and to call witnesses in his own behalf. Amendments 6 and 14, U.S. Const., and Art. I, sec. 18 (a), Mo.Const. Of course, the administration of criminal justice requires the state to call witnesses and requires that the state be able to cross-ex-

amine witnesses called by the defense. But the protection of the state's right to do so does not authorize a court to cut short the defendant's constitutional right to call witnesses in his own defense and to have the jury consider their testimony.

The difficulty lies in the application of the general rules noted without nullifying or seriously impairing the constitutionally-protected rights of a defendant in a criminal case.

The state cites no cases and our independent research has found none upholding a trial court's ruling in striking important testimony of a nonparty defense witness in a criminal case upon the ground that the witness refused to answer certain questions on cross-examination by the state. And the cases cited under the general propositions taken from *Wigmore* and *McCormick,* supra, do not hold that the testimony of a nonparty defense witness in a criminal case should be so stricken.

Most of the cases footnoted in *Wigmore* and *McCormick* focus on the defendant's right to cross-examine prosecution witnesses and the consequences flowing from a court's refusal, on motion by the defendant, to strike the testimony of a prosecution witness who refuses to answer some of the questions on cross and those who refuse to be cross-examined at all. Although cases such as *United States v. Cardillo,* 316 F.2d 606 (2d Cir. 1963), cert. den. 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963), one of the leading cases on the subject, do not directly answer the problem posed in the instant case, *Cardillo* does point out that the issue is one of constitutional dimension because the right of a defendant to cross-examine is constitutionally protected.

In *Cardillo* the court states at 611: "Since the right to cross-examine is guaranteed by the Constitution, a federal conviction will be reversed if the cross-examination of government witnesses has been unreasonably limited. E. G., *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *United States v. Masino,* 2 Cir. 1960, 275 F.2d 129; *United States v. Lester,* 2 Cir. 1957, 248 F.2d 239. However, reversal need not result from every limitation of permissible cross-examination and a witness' testimony may, in some cases, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross-examination. In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. *United States v. Kravitz,* 3 Cir. 1960, 281 F.2d 581; *Hamer v. United States,* 9 Cir. 1958, 259 F.2d 274; *United States v. Toner,* 3 Cir. 1949, 173 F.2d 140. On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part, *Montgomery v. United States,* 5 Cir. 1953, 203 F.2d 887; cf. *United States v. Andolschek,* 2 Cir. 1944, 142 F.2d 503; *Stephan v. United States,* 6 Cir. 1943, 133 F.2d 87; *United States v. Keown,* W.D.Ky.1937, 19 F.Supp. 639."

*Cardillo* distinguished questions which were proper cross-examination but collateral to the main inquiry such as those relating solely to the credibility of the witness or to prior criminal activity of the witness from questions directly relating to the participation of two of the defendants in the conspiracy for which they were being tried. The court upheld the trial court's ruling refusing to strike a witness's testimony where the questions related to the collateral matter but held the trial court erred in refusing

to strike the testimony of a prosecution witness who refused to answer questions on cross-examination which bore directly on the participation of two of the defendants in the conspiracy. The case was reversed as to these two defendants, Harris and Kaminsky, because the court determined that the refusal of the witness to answer questions bearing directly upon the complicity of those defendants in the crime charged "thwarts a fundamental right of the defendant to cross-examine his accusers." 316 F.2d at 613.

In arriving at its conclusion, *Cardillo* pointed out that not every refusal to answer by a witness claiming his fifth-amendment rights requires the striking of his testimony or a part thereof, and stated at 613: ". . . There would appear to be at least three categories to be considered. The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose. As to the first and second categories suggested, whether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances. Unsatisfactory as such a generality is for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury of reflective appellate deliberation, any set of specific dogmas would be even more unworkable."

■ Under the present procedure in Missouri, the court could not orally or in writing instruct the jury with reference to the credibility of a specific witness. See MAI–CR 2.01, par. 2, notes on use. But the credibility of a witness who refuses to answer questions on cross-examination may be argued to the jury under MAI–CR 2.01.

■ It is seen from *Cardillo* and cases cited therein that courts must be acutely aware of a defendant's right to confront and cross-examine prosecution witnesses and to not permit that right to be diminished by recalcitrant witnesses who give damaging testimony on direct and then refuse to answer questions on cross which are closely related to the commission of the crime because those rights are constitutionally protected.

By the same token, courts must also be acutely aware of the equally important constitutional right of a defendant in a criminal case to call witnesses in his defense and to have the jury consider their testimony. This right cannot be diminished or overridden simply because a nonparty defense witness chooses to refuse to answer some questions put to him on cross-examination by the prosecution.

While there may be other cases, the only ones cited by the parties and those found by our own research which deal with striking evidence offered by the defense in a criminal case for failure to answer questions on cross-examination are: *People v. McGowan,* 80 Cal.App. 293, 251 P. 643 (1926); *People v. Barthel,* 231 Cal.App.2d 827, 42 Cal.Rptr. 290 (1965); *State v. Monsoor,* 56 Wis.2d 689, 203 N.W.2d 20 (1973), rev'd, 497 F.2d 1126 (7th Cir. 1974); and *People v. Williams,* 30 Cal.App.3d 502, 106 Cal.Rptr. 324 (1973).

*Williams* was an appeal by the state from a trial court's order dismissing an information charging the defendant with aggravated assault on the ground that the defendant had been deprived of his constitutional right to a speedy trial. This dismissal order followed an evidentiary hearing on the defendant's motion to dismiss. During that hearing the *defendant* offered *his* declaration in evidence under penalty of perjury. The declaration consisted of a sworn statement to the effect that the defendant had been available at an address in Berkeley, California, for service of a warrant since 1968. There had been an 18-month delay

between the filing of the complaint and the date of his arrest. The state objected to the declaration unless the defendant Williams took the stand and stood cross-examination as to its contents. The *defendant* refused to be cross-examined whereupon the state's objection was sustained and the declaration was not allowed in evidence.

In *McGowan* the defendant, who was charged with attempting to rob one Anderson at 825 Sansome Street and who was apprehended in a hospital where he had been taken for a gunshot wound in the abdomen, testified he had been shot by a man named Friel at 10th and Patrero streets and that he had not run away from the victim Anderson on Sansome Street. On cross-examination defendant was asked where he had been before arriving at 10th and Patrero and he replied he had just taken a young lady home. When asked her name and address, the *defendant* refused to answer. The court ordered him to answer but he persisted in his refusal so the court struck all of his testimony. The California court of appeals noted that a defendant in a criminal case cannot be compelled to testify but if he does testify voluntarily then he may be cross-examined upon all matters about which he had been examined on direct. The court held the questions asked on cross-examination were proper and that "[t]he court did not strike out the testimony as a punishment for contempt, but for the reason that through no fault of the prosecution, *but through the deliberate act of the defendant himself* the prosecution was deprived of the opportunity of cross-examining the defendant." 251 P. at 645. (Emphasis added.)

In *Barthel* the defendant was convicted of engaging in bookmaking, occupying a room with betting paraphernalia, and recording or registering bets. During her trial the *defendant* took the stand in her own defense for the limited purpose of attacking the evidence relating to her knowledge of the officers' presence before they forcibly entered. On direct examination she testified she heard unintelligible noises but was not aware the police were demand-

ing entry. On cross-examination she was asked if she had hidden some objects under a mattress before the officers entered. An objection to the question was overruled and her attorney advised her not to answer on self-incrimination grounds. She refused to answer on those grounds and the court struck her testimony. The appellate court held that if a *defendant* offers himself as a witness he may be cross-examined with respect to facts or denials which are necessarily implied in his testimony. The court said that where a witness refuses to be cross-examined the direct testimony may be stricken citing *People v. Abner,* 209 Cal.App.2d 484, 25 Cal.Rptr. 882 (1962). In *Abner* the court said the same thing citing *People v. McGowan,* supra. In *Abner* the court also held there was no refusal to answer questions on cross and said the cases dealing with a *refusal* to answer questions on cross-examination were not applicable.

In *Williams, McGowan,* and *Barthel,* it was the *defendant* who, after taking the stand as a witness in defense, refused to answer material questions on cross-examination. And, as pointed out in *McGowan,* the striking of the testimony of the *defendant* was proper because the refusal to answer was the *deliberate act of the defendant himself.* It is also obvious that the threat to strike a defendant's testimony unless the defendant answers the questions is calculated to coerce the defendant to answer and serves the same purpose as contempt.

In the instant case, it was not the defendant who refused to answer questions and the refusal of the witness called by the defendant cannot be considered a refusal of the defendant.

In *Monsoor* a nonparty defense witness refused to answer certain questions put by the prosecution on cross-examination. The questions did not relate to the subject matter of the direct examination but were for the purpose of undermining the credibility of the witness Lyons. The question he refused to answer was whether or not anyone else ever smoked marijuana at his or defendant's residence. The trial court then

struck the entire testimony of the witness. The Supreme Court of Wisconsin held the trial court abused its discretion in striking the witness's testimony but held it was not prejudicial in that case because the court could not say that striking the testimony probably affected the result of the trial.

The Supreme Court of Wisconsin in *Monsoor* used two criteria for determining whether prejudice occurred: one, whether the error affected a substantial right and, two, whether it probably affected the result of the trial. As noted, the court held it was error to strike the testimony so, arguendo, the court found that it affected a substantial right. But, then, using the second part of its criteria the court failed to find that the absence of the testimony "probably affected the result of the trial" and on that basis held no prejudice occurred and affirmed the conviction.

Subsequently, Monsoor instituted habeas corpus in the federal district court of Wisconsin claiming that striking his witness's testimony violated his Sixth and Fourteenth Amendment rights to call witnesses in his own defense. The district court denied relief. The United States court of appeals in *State of Wisconsin ex rel. Monsoor v. Gagnon*, 497 F.2d 1126 (7th Cir. 1974), reversed and remanded and, noting the criteria used by the Wisconsin Supreme Court to determine prejudice, stated at 497 F.2d 1130: "As noted, *supra*, the Supreme Court of Wisconsin declined to reverse Monsoor's conviction on the ground that the error in striking Lyons' testimony would not have 'probably affected the result of the trial'. 56 Wis.2d 689, 203 N.W.2d at 27. Before a federal constitutional error, however, can be held harmless, 'the court must be able to declare a belief that it was harmless beyond a reasonable doubt' *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). See also *United States v. Scott*, 7th Cir., 494 F.2d 298 decided by this court on February 26, 1974." The court of appeals then distinguished between the two parts of the witness Lyons' testimony. Lyons testified that on numerous occasions Monsoor had refused to sell marijuana to Bowman, an informer. Four other witnesses corroborated this testimony. It was held that striking that part of Lyons' testimony was not prejudicial because it was merely cumulative to the four other defense witnesses and therefore the error was harmless beyond a reasonable doubt. But, as to the testimony of Lyons that Monsoor did not receive any phone call from Bowman and, therefore, did not tell Bowman he (Monsoor) had some "grass" and agreed that Bowman could bring a friend along presumably to purchase some marijuana, the court said this testimony of Lyons supported the defense of entrapment. The court held it could not say that striking this testimony was harmless beyond a reasonable doubt and "did not contribute" to Monsoor's conviction.

The difference between the opinion of the Wisconsin Supreme Court in *Monsoor* and the opinion of the United States court of appeals on the same matter is that Wisconsin would hold prejudice occurred only if that court could say the striking of the testimony "probably affected the result of the trial", while the Seventh Circuit rejected that criterion saying the error in this type of matter is prejudicial unless the court could say the error was harmless beyond a reasonable doubt.

In *State v. Degraffenreid*, 477 S.W.2d 57, 64 (Mo. banc 1972), this court held that error in the admission of evidence should not be declared harmless unless it is so without question and cited cases. The concurring opinion of Finch, J., in *Degraffenreid*, concurred in by five other judges, made it clear that in Missouri the court must examine each case to determine if the error was harmless and hence not prejudicial. The rule set out in *Degraffenreid*, however, is for all practical purposes the same as the rule set forth in *State ex rel. Monsoor v. Gagnon*, *supra*, and will be applied to the instant case.

In the instant case the testimony of the witness which was ordered stricken was the only evidence in the case that defendant was not present and did not participate in the crime. It is not cumulative to any

other evidence. As noted, supra, the accused has an absolute constitutional right to have witnesses testify in his defense. When a court strikes a nonparty defense witness's testimony because of the refusal of that witness to answer a material question, the sanction is not upon the witness but on the defendant. This type of sanction may well deprive the defendant of his right to have witnesses testify in his defense and thereby violate the defendant's rights under the Sixth Amendment to the United States Constitution and Art. I, sec. 18(a), of the Missouri Constitution.

There is no indication in the instant case that the defendant or his attorney directed the witness to refuse to answer the question put to him concerning the identity of the third robber, yet the sanction was imposed the same as if the defendant was responsible for the witness's refusal to answer the question.

The court does not have the same discretion to strike the testimony of a *nonparty defense witness* as it does to strike the testimony of a witness for the prosecution or the testimony of the defendant himself when the witness refuses to answer material questions on cross-examination. This is founded on the constitutional rights of the defendant to confront his accusers, to cross-examine them, and to call witnesses in his own behalf. Those rights do not inure to the prosecution by the constitution—only to the defendant. See Amend. VI, U.S. Const., and Art. I, sec. 18(a), Mo.Const. Of course, the administration of criminal justice requires that the state call witnesses and requires the state be able to cross-examine witnesses called by the defendant. But the protection of the state's right to do so does not authorize a court to cut short the defendant's constitutional right to call witnesses in his own defense and to have the jury consider their testimony.

Acceptance of the proposition that a defendant in a criminal case has a constitutional right to call witnesses in his own defense does not necessarily mean that a trial court must in every instance and under all circumstances refrain from striking all or part of a recalcitrant nonparty defense witness's testimony. In *Cardillo, supra,* the court held that even where the question which the witness refuses to answer is closely related to the commission of the crime, the question as to whether his testimony should be stricken must depend upon the discretion of the trial judge in the light of the particular circumstances. 316 F.2d at 613.

In the instant case the testimony of witness Moore, if believed by the jury, operated as a complete defense. If the jury believed witness Moore, then it would believe that the defendant was not present in the car, did not participate in the robbery, was not the man who ran from the car and, in short, was not guilty. Yet, this testimony was stricken because the witness declined to identify another person—the man who was arrested with him in the car—whose identity was already known to the police and the prosecution, and who had already been identified in testimony before the jury by the police officers who arrested him, as a man named Bates. And, as noted supra, this evidence was in no sense cumulative.

Recognition of the constitutional dimensions of the right to call witnesses in one's defense means that the power to strike testimony crucial to the defense cannot be lightly employed. This is so even though the conduct of the nonparty witness is irritating to the point of frustration to the court and perhaps contemptuous of a court's order to answer the question. Finally, it must be borne in mind that striking the testimony of such a nonparty witness may deprive a defendant—but not the witness—of the right to have witnesses testify in defense.

The court holds that the trial court abused its discretion in striking the testimony of witness Moore and that the defendant was prejudiced in his defense.

The judgment of the circuit court is reversed and the cause is remanded for a new trial.

RENDLEN, J., not participating.

DONNELLY, Judge, concurring in result.

I would not adopt the *Cardillo* rule in this case for at least two reasons:

(1) As I understand *Cardillo*, the refusal of a witness to testify would be excused if cross-examination were collateral to the main inquiry. This facet of *Cardillo* is of dubious constitutional validity. In *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), on cross-examination of the principal prosecution witness the trial court sustained the prosecutor's objections to questions which pertained to matter collateral to the main inquiry—the credibility of the prosecution witness. The court held defendant was denied his Sixth Amendment right to confront the witnesses against him.

(2) I agree with the author of the *Cardillo* opinion that it constitutes and represents unsatisfactory "generality * * * for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury of reflective appellate deliberation * * *." I do not agree with the author of the *Cardillo* opinion that "any set of specific dogmas would be even more unworkable."

In 5 Wigmore, Evidence, § 1391 (Chadbourne Rev. 1974), the general rule is stated as follows:

"Where the witness, after his examination in chief on the stand, has *refused* to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed, and his direct testimony should be struck out. On the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result."

In McCormick, Evidence, § 19, appears the following:

"It is submitted that the judge should let the direct testimony stand but should be required on request to instruct the jury in weighing its value to consider the lack of opportunity to cross-examine."

In Missouri, a witness may be penalized for refusing to testify. Section 491.200, RSMo 1969, reads as follows:

"A person summoned as a witness, and attending, who shall refuse to give evidence which may lawfully be required to be given by such person, on oath or affirmation, may be committed to prison by the court, or other person authorized to take his deposition or testimony, there to remain, without bail, until he gives such evidence."

I would submit that the following rules of procedure are appropriate in a situation such as presented here:

(1) If a *non-party* witness shall refuse to give evidence which may lawfully be required to be given, the trial court may impose the sanction provided in § 491.200, supra.

(2) If the sanction provided in § 491.200, supra, is unsuccessful or impractical, and if the witness refuses to submit to cross-examination at all, his direct testimony should be struck out.

(3) If the sanction provided in § 491.200, supra, is unsuccessful or impractical, and if the witness shall refuse to give an answer to a question which he may lawfully be required to answer, after being instructed by the trial court to answer, the trial court should let the direct testimony stand but should immediately advise the jury that the witness' refusal may be considered by the jury in determining the credibility of the witness and the weight his direct testimony deserves (Cf. Devitt and Blackmar, Federal Jury Practice and Instructions, 2d.Ed.1970, § 12.12). Admonitions by courts to juries during trial are commonplace in Missouri. For example, we encourage trial courts to instruct juries to disregard objectionable testimony. *State v. Lira*, 372 S.W.2d 80, 82 (Mo.1963).

(4) If the witness continues to refuse to answer questions to an extent that "the opportunity of * * * probing and testing his statements [made on direct examination] has substantially failed," and he has, in effect, refused to submit to mean-

ingful cross-examination at all, his direct testimony should be struck out.

I would turn then to application of these rules to the circumstances of this case. Witness James Moore did not refuse to submit to cross-examination. He refused to answer only one question. The trial court struck his direct testimony. The effect of this ruling was to deprive appellant of his only witness. In my opinion, the trial court prejudicially erred.

I concur only in the result.