**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jack BATTLES, Defendant–Appellant.**

No. 40699.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 2, 1980.

Ronald E. Pedigo, Public Defender, 24th Judicial Circuit, Farmington, for defendant–appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

SATZ, Judge.

A jury convicted defendant of burglary, second degree and stealing and assessed punishment at five years on each charge. The trial court imposed the punishment as consecutive sentences. We affirm.

As one of his grounds on appeal, defendant claims there was not sufficient evidence to support the guilty verdicts. To test the sufficiency of the evidence, we consider those facts in evidence and the reasonable inferences which favor the state and we disregard those facts and inferences to the contrary. *E. g., State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), cert. denied, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

On the evening of December 10, 1977, defendant, along with Al McNorton, Ernest Grimm and Bill Grimm, visited Lena Kohut at her home in St. Francois County. Lena Kohut and McNorton were acquainted with each other. The four men began to listen to Kohut's stereo in the living room and Kohut went into the kitchen to eat. She was interrupted by McNorton, who asked her for a hammer to fix some curtains which, he said, had fallen in the living room. Kohut gave him a hammer and returned to the kitchen. Later, Kohut asked the men to leave and they complied.

Kohut then examined her curtains and windows. She used nails to secure her windows. She noticed these nails had been removed and one of her windows had been unlocked. She replaced the nails, locked the unlocked window and, about 11:00 p. m., she left her home. She came home the next morning, December 11, about 1:30 a. m. and discovered her stereo, color television console and small television set were missing. She inspected her home and noticed that her bathroom window had been pried open. She then notified the local police. The police officers arrived, noticed the house had been ransacked, observed the open bathroom window, discovered a "fresh" nail hole in the window frame and also discovered scuff marks about four feet below the window sill. Kohut told the officers that her stereo and two television sets had been sto-

len by four men who had been in her home earlier that night.

On the next evening, December 12, defendant, Ernest Grimm, Al McNorton and a Charles Crawford were at the home of Grimm's mother. In response to a request of defendant's, the three men accompanied defendant to another house to help him move a television set and a stereo. After loading the television and stereo into a car, the four men got into the front seat and proceeded to drive across St. Louis County toward their next destination. According to Crawford, defendant attempted to sell the television and stereo to him during the trip. Before defendant and his companions reached their destination, their car was stopped by a St. Louis County police officer, James Cosgrove, because the car had "run a red light". The trunk of the car was open. Officer Cosgrove saw a television console in the open trunk and also saw a stereo in the back seat of the car. Cosgrove asked who owned the television and stereo and received conflicting answers. He then placed a call for a Detective Sease to come to the scene and, while waiting for Sease, Cosgrove began a record check of the four men.

Sease arrived and began questioning the four men. Defendant told Sease that he owned the television and stereo and that he had stored these items for eight months at a Robert Paddock's home. Defendant explained that he and his wife had been "in the process of a divorce" and he had stored the items in order to hide them from his wife. He added that he and his wife had reconciled their differences and, for this reason, he and his companions were moving the items back to his home. According to Sease, defendant's companions agreed that they were merely helping defendant move the items in question.

To check defendant's story, Sease obtained a Robert Paddock's phone number from a nearby phone directory, phoned this Robert Paddock and questioned him. Sease returned and asked defendant whether the stereo and television were not stored with Paddock for only one or two days rather than eight months. Defendant changed his

story and said the items had been stored with Paddock for only two days. Sease then placed defendant and his three companions under arrest for "suspicion of possession of stolen property". All four men were taken to a sub–station of the County Police Department. There, defendant was advised of his *Miranda* rights. He gave no statement. Apparently, defendant and his companions were subsequently released on bond.

The next day, December 13, defendant phoned Sease and asked that the television and stereo be returned to him. Sease responded that he could not return the items to defendant because the true owner had been determined. Nonetheless, defendant wanted to try to regain these items and Sease told defendant to come to the station that evening. Shortly after this phone conversation, Sease was notified that warrants had been issued in St. Francois County for defendant's arrest. That evening, defendant came to the County Police Station with McNorton and Grimm to reclaim the stereo and television set. While there, Sease overheard defendant tell McNorton, "We're in trouble. You've got to talk her out of prosecuting". McNorton replied, in part, "I don't know whether I can talk her out of it". About that time, a Deputy Sheriff King from St. Francois County arrived with Lena Kohut and with arrest warrants for defendant and his two companions. Sease directed a Detective Jerry Wheeling to book the three men. While booking the suspects, Wheeling overheard defendant again tell McNorton to "get her not to prosecute". McNorton again replied that he did not think he could do so but he would try.

Lena Kohut positively identified the television and stereo found in the car as the items taken from her home. Moreover, the serial numbers of the television and stereo which Kohut had reported stolen matched the serial numbers on the television and stereo found in the car.

■ In attacking the sufficiency of the evidence, defendant concedes that an inference of guilt is permissible from the unexplained exclusive possession of property

recently stolen in a burglary and this possession and inference are sufficient proof to submit both a burglary and a stealing charge to a jury. *State v. Durham,* 367 S.W.2d 619, 621 (Mo.1963); *State v. Denison,* 352 Mo. 572, 178 S.W.2d 449, 455 (1944); *State v. Sallee,* 436 S.W.2d 246, 250 (Mo. 1969). However, defendant cites *State v. Watson,* 350 S.W.2d 763 (Mo.1961) and challenges the application of this rule to the present facts. He argues that defendant's "mere presence" in the car containing the stolen property was insufficient to establish defendant's exclusive possession of that property. Defendant's reliance on *State v. Watson, supra,* is misplaced. In *Watson,* "[t]he defendant told the arresting officers that he knew nothing about the stolen merchandise, whose it was or where it came from". *State v. Watson, supra* at 767. On those facts, the Court stated that the defendant's presence in the automobile there in question, "without more", was not sufficient to establish that defendant's possession of the stolen property. In the present case, according to defendant's companion Crawford, defendant attempted to sell the property in question to him and, according to Detective Sease, defendant consistently maintained he was the owner of this property. The attempt to sell and the claim of ownership were, in effect, a claim of exclusive possession. *State v. Mesmer,* 501 S.W.2d 192, 195 (Mo.App.1973).

■ Defendant next contends the trial court unduly restricted his cross–examination of Lena Kohut. During his cross–examination of Kohut, defendant's counsel asked her whether she and Deputy Sheriff King were "having a relationship outside of him being a police officer". The trial court sustained the state's objection to this question on the ground that it raised a collateral and irrelevant issue. On appeal, defendant contends a deputy sheriff is a representative of the state and, therefore, Kohut's possible intimate and friendly relations with this deputy sheriff would translate into a possible bias in favor of the state and a possible prejudice against defendant. For this reason, defendant argues, he should

have been permitted to cross–examine Kohut about her relationship with the deputy.

Defendant did not set out this attack in his motion for a new trial. The closest relevant assertion of error in his motion merely states the bald conclusion that "the court erred in excluding competent relevant material evidence offered by the defendant". This general assertion failed to preserve for review defendant's now particularized and specifically defined assertion of error. *State v. Meiers*, 412 S.W.2d 478, 480 (Mo.1967); *State v. Pride*, 567 S.W.2d 426, 433 (Mo.App.1978); Rule 27.20(a).

■ In addition, during his cross–examination of Kohut, defendant's counsel had her identify an affidavit of non–prosecution which she had executed and, then, he moved for the admission of the affidavit into evidence. In response to the state's objection that the affidavit would "introduce collateral and irrelevant issues", defendant's counsel argued that the affidavit "bears on [Kohut's] bias, prejudice, other things, perhaps".[1] The trial court sustained the state's objection.

Defendant now contends the trial court erred in prohibiting him from developing the circumstances under which Kohut withdrew her affidavit of non–prosecution. Defendant argues he might have been able to demonstrate the state exercised undue influence on Kohut to make her continue the prosecution. Unfortunately, as the record reveals, defendant's offer of proof did not inform the trial court that his cross–examination would take the specific direction he now outlines on appeal. Defendant argued only for the introduction of Kohut's affidavit of non–prosecution and merely argued for the affidavit's introduction on the general ground that it would show Kohut's "bias, prejudice [and] other things, perhaps". We must assume the defendant made his offer of proof as fully and favorably as he could. *Rutledge v. Baldi*, 392

S.W.2d 244, 248 (Mo.1965). Obviously, he failed to outline the specific testimony he sought to elicit and the purpose for which the testimony would have been introduced. Thus, he failed to show the trial court the relevancy and materiality and, thereby, the admissibility of the evidence he now argues was improperly excluded. Without this or a comparable offer of proof, the trial court was not shown a proper alternative to its ruling and, therefore, on the present record, it ruled properly. *E. g., State v. Umfrees*, 433 S.W.2d 284, 286 (Mo. banc 1968).

■ Also, during cross–examination, Lena Kohut invoked her Fifth Amendment privilege against self–incrimination and refused to answer certain questions propounded by defendant's counsel. Defendant now contends that Kohut's refusal to answer deprived him of his Sixth Amendment right to confront witnesses through full cross–examination, and, according to defendant, Kohut's refusal to answer required the trial court to strike her direct testimony. In failing to do so, defendant argues, the court erred. It is not clear whether defendant is complaining about the trial court's failure to strike all of Kohut's direct testimony or about the court's failure to strike her direct testimony on subjects upon which she asserted her Fifth Amendment privilege. In either case, defendant would not prevail.

We set out that portion of Kohut's cross–examination pertinent to this issue:

"[Defendant's Counsel]: 'Did you and Al McNorton get into an argument on the night of December 10, 1977 over Mr. McNorton leaving your house with Jack Battles?'

[Witness' Personal Counsel]: 'My client is claiming the Fifth Amendment.'

[Defendant's Counsel]: 'I suppose that objection will go to anything else?'

[Witness' Personal Counsel]: 'Yes.'

[Defendant's Counsel]: 'That's all I have.'

---

1. In his brief, defendant assumes that the affidavit of non–prosecution referred to him. However, the record reveals only that an affidavit of non–prosecution was executed. It does not reveal the name of the accused. For our purposes, we assume that the affidavit reflected defendant as the accused. The procedural propriety of introducing defendant's evidence in the state's case in chief was not raised.

Redirect Examination by [prosecuting attorney]."

It is apparent from the record that defendant failed to preserve his present complaint for review. At trial, he failed to object to and failed to demonstrate any impropriety in Kohut's invocation of her Fifth Amendment privilege. *See State v. Graham*, 527 S.W.2d 722, 724 (Mo.App. 1975); *see also State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974); *State v. Pride, supra* at 433–434. More important, he never moved the trial court to strike Kohut's testimony, and, therefore, the issue of striking Kohut's direct testimony was never before the trial court and was not preserved for review. *State v. Carlos*, 549 S.W.2d 330, 333 (Mo. 1977); *State v. Sykes*, 573 S.W.2d 112, 113 (Mo.App.1978).[2]

Defendant next asserts that he had ineffective assistance of counsel and invites this court to treat this assertion as an assertion of plain error under Rule 27.20(c). Defendant argues that his trial counsel was ineffective[3] because he did not move to suppress the statements defendant made to McNorton at the county police station, he did not object to the introduction of these statements into evidence and he did not raise the issue of admissibility of the statements in his motion for a new trial.

A claim of ineffective assistance of counsel may be raised as plain error on appeal only where the allegations arise "from isolated instances and the record as to each of them is fully developed". *State v. Hedrick*, 499 S.W.2d 583, 585–586 (Mo. App.1973); *State v. Evans*, 559 S.W.2d 641, 642 (Mo.App.1977). Defendant's contention rests on a clear and fully developed record. However, defendant's contention itself is not as clear. He points out that, before defendant arrived at the county police station on December 13, Detective Sease knew that a warrant for defendant's arrest had been issued. From this, defendant reasons "[t]he subjective intent of the police officers was to take the [defendant] into custody, or in other words, the [defendant] could not leave the police station when he wanted". Thus, defendant argues, when he arrived at the police station, he was "in custody" and, therefore, at that time, he was entitled to be given his *Miranda* rights before any interrogation. Since these rights were not given, defendant contends, his statements made to McNorton at the police station were inadmissible and should have been suppressed. We disagree. The statements in question were voluntarily made by defendant to McNorton. Although these statements were made in the presence of police officers, they were not the product of an in–custody interrogation by the officers. As such, the statements were not within the purview of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and, therefore, on the present record, they were admissible. *State v. Kurtz*, 564 S.W.2d 856, 859 (Mo. banc 1978); *State v. Mitchell*, 491 S.W.2d 292, 296 (Mo. banc 1973).

Judgment affirmed.

SMITH, P. J., and ALDEN A. STOCKARD, Special Judge, concur.

---

**2.** Kohut's assertion of her Fifth Amendment privilege precluded inquiry into collateral matters bearing only on her credibility and did not prevent inquiry into matters about which she testified on direct examination. Thus, even if the motion to strike were properly made, it is questionable whether the trial court would be required to strike all or part of Kohut's direct testimony. *State v. Carlos, supra* at 344; *see State v. Brown*, 549 S.W.2d 336, 342–343 (Mo. 1977); *United States v. Cardillo*, 316 F.2d 606 (2d Cir. 1963); *cert. denied*, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963).

**3.** Defendant's counsel on appeal was defendant's counsel at trial.